## Franks v. Heck & Company.

(Decided February 12, 1918.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

Malicious Prosecution—Probable Cause for Arrest—Question for Court.—Where the uncontradicted evidence shows that a person who procured the arrest of another was without malice and has such information as would induce a person of ordinary prudence to in good faith believe that the person arrested had committed the offense for which he was arrested, this will present a good defense to an action for malicious arrest, and the court may take the case from the jury, although the evidence shows that the person arrested was, in fact, innocent.

B. F. GRAZIANNI for appellant.

WM. A. BYRNE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, Franks, brought this suit against Heck & Co. to recover damages for malicious prosecution , averring that they procured his arrest upon the charge of wrongfully and fraudulently converting property of another to his own use, and that upon his trial under this charge he was acquitted.

Heck & Co. in their answer admitted that they procured the arrest of Franks but averred that they did so upon information showing probable cause for his arrest and under the belief in good faith that he was guilty of the charge under which he was arrested.

The case went to trial before a jury, and when all the evidence offered by both parties was in, the trial judge ordered a verdict for Heck & Co., and of this ruling Franks complains.

On this appeal the only question about which we need concern ourselves is, did Heck & Co. at the time, and before they procured the arrest of Franks, have such information as would induce a person of ordinary prudence to in good faith believe that Franks had committed the offense for which he was arrested? If they did—and the evidence introduced on the trial showed without contradiction that the information upon which they acted was sufficient to establish probable cause that he was guilty of the offense for which they had him arrested—

the ruling of the trial court was correct, although Franks may have, in fact, been innocent of the offense charged.

We may also here say that there is no claim that Heck & Co. were prompted by malicious motives in securing his arrest, and the whole case turns, as we have said, on whether they did or did not have sufficient information to in good faith believe he was guilty.

Heck & Co. were furniture dealers in Cincinnati, Ohio, and in connection with their retail store for the selling of goods, they had a warehouse on another street in which goods were stored. Some time before the arrest of Franks they had information leading them to believe that goods were being stolen from their warehouse, at or from which place it was not usual or customary to sell goods, as sales were made at their other store. A short while after this information was secured, they employed a detective by the name of Saul to keep an eye on things going on at the warehouse and to report to them what he discovered. Saul, after reporting from time to time that goods were being taken from the warehouse by certain persons whom he named, through connivance with a man named Barth in the employ of Heck & Co., and who had charge of their warehouse, on one occasion early in the morning discovered a man leaving the warehouse carrying on his shoulder a load of rugs, and following this man he found that he went with the load of rugs to the Cincinnati end of the suspension bridge which crosses the Ohio river into Covington, Ky., and after waiting there a while, he put the rugs in a wagon, in which they were taken to Covington and placed in a second-hand store there. He also discovered that a little while afterwards the rugs were taken from the first second-hand store to the store of another second-hand dealer named Dahlenberg, in Covington.

Saul immediately notified Heck & Co. by telephone, advising them what he had discovered, and thereupon Heck & Co., together with a Cincinnati detective, went to their warehouse and subjected Barth to an examination, in the course of which he made a full confession, disclosing various acts of wrongdoing on his part; and in the course of the confession he said that early on that morning Franks, whom he had known when they worked together at the store of Steinkamp, came by the store and told him that he would like to have a rug, that he lived out at Verona, Ky., on a farm and needed a rug;

that he said to Franks that "It was pretty risky business and that I was in bad anyway. In reply Franks said, 'I made mine when I shipped at Steinkamp's (where he was shipping clerk); why don't you make yours now?'" That Franks finally persuaded him to let him have a rug; that he was then called to the telephone and when he came back Franks said he would take the rug and handed him five dollars; that he believed Franks had only one rug, which was worth probably fifteen or eighteen dollars; but here it might be said that the evidence conclusively established that Franks got two rugs worth about thirty-five dollars for the five dollars.

While this interview with Barth was going on, Saul, who was in Covington, obtained the assistance of a couple of Covington policemen and they found the two rugs that Franks had gotten in a shed in the back yard at Dahlenberg's place of business, and they also learned that Franks had sold the rugs for nine dollars.

After obtaining this information from Saul and Barth, Heck & Co. procured the arrest of Franks in Covington on the afternoon of that day; and it appears from the evidence that when the officer making the arrest said to Franks that he was wanted at headquarters, Franks replied, "What is it about, those rugs?" and and he would be able to clear himself.

This evidence, which furnished all the information Heck & Co. had when they procured the arrest of Franks, was plainly sufficient, as we think, to justify them in good faith believing that Franks was guilty of the offense charged against him; in other words, they had probable cause for procuring his arrest.

It is not indispensable that a person, who has information reasonably sufficient to satisfy a prudent man that another person has taken his property and converted it to his own use under circumstances that would make his obtention of it an offense, should obtain legal advice before securing the arrest of the wrongdoer. Where, as in this case, there is a total absence of evidence tending to show malice, it is only necessary that he should act upon information sufficient to create an honest and reasonable belief that the party he is about to have arrested has committed the offense for which he intends to have him arrested, and whether he has such information or not is a question of law. Thus in Meyer v. Louisville,

etc., Ry. Co., 98 Ky. 365, this court, quoting with approval from Newell on Malicious Prosecution, said:

"What facts and circumstances amount to probable cause is a pure question of law. Whether they exist or not, in any particular case, is a pure question of fact. The former is exclusively for the court; the latter for the jury, when the facts are in controversy, the court instructing them as to law. . . .

"In actions for malicious prosecution the real controversy is generally upon the question of probable cause, the want of which is a vital and indispensable element in the plaintiff's case, and as to which the burden of proof is upon him. Whether there was want of such cause is a question of law upon the facts proved. It is to be judged of, not upon the actual state of the case, but upon the honest and reasonable belief of the party that instituted the proceeding complained of."

In reference to the facts of that case the court further said, and it is very pertinent and applicable here, that "There is not an element of dispute involved in this statement of facts. The jury could not, therefore, disbelieve them, if they would, and it would have been an idle thing to submit the propostion to them. Neither the guilt nor innocence of the plaintiff, nor the truth of the information, is involved." To the same effect are: Ahrens & Ott Mfg. Co. v. Hoeher, 106 Ky. 692; Schwartz v. Boswell, 156 Ky. 103; Keiner v. Collins, 161 Ky. 696.

Wherefore, the judgment is affirmed.