## Sills v. Paducah Box & Basket Co. et al.
## Simmons v. Same.

(Decided Dec. 15, 1933.)

BEN S. ADAMS for appellants.

L. B. ALEXANDER and C. C. GRASSHAM for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Clay Jones, foreman of the Paducah Box & Basket Company, swore out a warrant against Floyd Sills and C. H. Simmons, charging them with the crime of grand larceny. On a hearing before the police court of Paducah, Sills and Simmons were held over to the grand jury, which returned an indictment against them. On

their trial in the McCracken circuit court, they were acquitted. Shortly after their acquittal they brought separate actions against the Paducah Box & Basket Company to recover damages for malicious prosecution. The cases were heard together, and at the conclusion of all the evidence the trial court directed the jury in each case to find for the defendant. Sills and Simmons appeal.

The facts are: The Paducah Box & Basket Company was engaged in the manufacture of baskets and boxes in Paducah, and appellants, who had been in their employ for several years, decided to go into the same business for themselves. They inquired of Clay Jones, foreman of the Paducah Box & Basket Company, if the company would sell them stock for the purpose of manufacturing baskets. Jones advised them that the company would not do so, as they would be competing with the company. Simmons then went to the mill of Roberts-Ligget Company, of Metropolis, Ill., accompanied by a carpenter, G. E. Trauber, for the purpose of buying supplies for the making of 16-splint one-half bushel baskets and boxes, and at that time obtained the measurements and dimensions of a crimper and form suitable for that kind of a basket. At the same time they employed Trauber to make for them two forms and crimpers, and he made them in the next two or three days. A few days later Simmons went to Metropolis and purchased the stock for use in manufacturing the baskets. On that day he brought home a part of the supplies, and on the following day went back for the balance of the stock, the purchase price of which amounted to $55. On his second trip he bought 30 pounds of tacks, for which he paid cash. The invoice bill had been made out on the previous day, and the tacks, being a cash item, were not on the invoice. Appellants also bought some tacks from the Ripley Hardware Company. Appellants carried on their work in an old building on premises rented by Simmons. With these supplies they began making 16-splint half bushel baskets, and sold some to the local trade, but they were not satisfactory. During all this time appellants were still working for the company, and were occasionally absent. Desiring to know what was the matter, Jones and Max Miller, vice president of the company, went to appellants' shop and found on the premises some forms

and crimpers similar to those used by the company, and other personal property. These facts were reported to the company's attorney, who, together with a detective and Jones, went to the premises. Neither Sills nor Simmons was there. While there, they saw several pieces of core lumber, and discovered hidden away a keg with the company's name printed on it partly filled with tacks of the kind the company used. On the same afternoon they returned for the purpose of interviewing appellant Simmons, and found that the forms and crimpers had been taken away. According to appellants, however, and Trauber, the forms had been removed by Trauber for the purpose of changing them from a 16-splint one-half bushel basket to an 18-splint one-half bushel basket to meet the demands of the trade. In their testimony appellants were unable to account for the presence of the core lumber, saying that they found it there and did not know how it got there. There was further evidence that it was customary for the company to throw empty tack kegs into a hollow near the company's premises, and for the employees to carry them home for use as kindling and flowerpots, and that the keg at appellants' working place was found in the hollow and carried there by Sills, and that the tacks which appellant had purchased at Metropolis, Ill., and in Paducah, were placed in the keg.

In discussing the question of probable cause, we shall lay aside the fact that appellants were held to the grand jury, and that they were indicted for grand larceny. The acquittal of appellants of the criminal charge was not prima facie evidence of the want of probable cause for the prosecution, but the burden was on them to show want of probable cause. Schott v. Indiana Nat. Life Ins. Co., 160 Ky. 533, 169 S. W. 1023, Ann. Cas. 1916A, 337; Stephens v. Gravit, 136 Ky. 479, 124 S. W. 414. We shall put no stress on the fact that appellee acted on the advice of its attorney. We shall assume that appellee's officers were mistaken in concluding that the forms and crimpers were appellee's property. After doing this, we find the following situation: Appellants, while in the employ of appellee, began the manufacturing of baskets. When appellee's officers went to appellants' working place, they found several pieces of core lumber, which, the evidence shows, belonged to appellee. They also found a tack keg that

was the property of appellee, and this keg was partly filled with tacks of the same kind that appellee used. On these facts, which are proven beyond controversy, appellee's officers acted, and had the right to act. Appellants' actual guilt was not involved, but the test is, Were the facts and information on which appellee's officers acted sufficient to induce a man of ordinary prudence to believe that appellants were guilty of the offense for which they were arrested? Of this there can be no doubt. Franks v. Theodore Heck & Co., 179 Ky. 276, 200 S. W. 469. It is true that appellants subsequently testified in the police court, and on the trial of these actions, that the core lumber was on the premises when they took possession, and that the tack keg had been found in the hollow near appellee's premises and carried by one of them to their working place and then filled with tacks which they themselves had purchased, but this evidence, though it might be sufficient to raise in the minds of the jury a reasonable doubt as to their actual guilt, is not sufficient to show want of probable cause, in view of the admitted facts existing at the time appellee's officers procured the warrant.

It follows that the directed verdict was proper.

Judgment affirmed.