Charles BELL, Plaintiff,

v.

JEWEL TEA COMPANY, Inc.,
Defendant.

Civ. No. 2732.

United States District Court
W. D. Kentucky, Louisville Division.

Nov. 29, 1955.

W. Clarke Otte, Frank E. Haddad, Jr., Louisville, Ky., for plaintiff.

Eugene B. Cochran, Thorp L. Wolford, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This case was tried to the Court January 3, 1955, January 10, 1955 and March 28, 1955, on which latter date the evidence was completed.

The suit arose out of the termination in December 1952 of the employment of the plaintiff Bell, a route salesman for defendant, Jewel Tea Company, Inc., as the result of alleged shortages in his accounts. Bell had a contract of employment which provided that all materials and goods delivered to a storeroom near the neighborhood in which Bell's route was located, remained the property of the defendant company, with the responsibility for the care and return of such goods not thereafter sold by Bell, resting with him as bailee.

As a condition of employment, plaintiff Bell was required to post bond of $152.26 to secure the defendant company in the fulfillment of said obligations. Plaintiff's contract of employment provided that he would be bound by the books and accounts which defendant would thereafter keep relating to the business conducted by the plaintiff and would make good in full all shortages.

After plaintiff's employment was terminated, defendant submitted a statement of the alleged shortages in accounts of the plaintiff and his refusal to make restitution to defendant's Attorney, Mr. Leo T. Wolford. The said Attorney recommended the submission of the facts to the Grand Jury of Jefferson County. An indictment of the plaintiff for embezzlement resulted. On the trial thereof, the jury returned a verdict of not guilty.

Plaintiff Bell then sued in the Jefferson Circuit Court for malicious prosecution and the case was removed to this Court on the ground of diversity of citizenship.

Defendant answered, denying malice in the submission of the case to the Grand Jury, asserting the advice of its Counsel as sufficient cause. Defendant also filed a counterclaim against plaintiff in the sum of $1,255.88, as the amount he owed defendant under the contract of employment.

The Court makes the following—

### Findings of Fact

1. Plaintiff Bell is, and was at the time of the institution of this action, a citizen and resident of Kentucky; and the defendant, Jewel Tea Company, Inc., is and was at the time of the institution of this action, a corporation created, organized and existing under the laws of the State of New York, with its principal office and place of business in Barrington, Illinois, and is a citizen of the State of New York.

2. Plaintiff Charles Bell was employed by Jewel Tea Company, Inc., on or about February 26, 1952, as a route salesman and he worked for defendant company in that capacity until on or about December 19, 1952. The route assigned to him was a certain area in South Louisville on which there were approximately 450 to 500 customers.

3. Defendant's employment was under a written contract dated February 26, 1952, styled "Salesman's Contract and Bond Agreement" which provided that the Company employed Charles Bell to sell, deliver and collect groceries and other merchandise handled by him and to perform such other duties as the Company might require of him during his employment. One of the provisions of the contract was—

"It is agreed that all merchandise delivered to the Salesman is to be

charged to and accounted for by him at retail selling prices and shall remain the property of the Company until delivered to its customers; and that all other properties and chattels entrusted to the Salesman are and shall remain the property of the Company. All collections made by the Salesman are and shall remain the property of the Company and shall be remitted to the Company at least twice each week as directed by the Company."

4. Under what is called in this record "Load Sheets" the Salesman requested merchandise to be delivered to him from time to time and the Company made said deliveries to enable the Salesman to in turn deliver to his customers the merchandise previously ordered from him.

5. The merchandise delivered to the plaintiff by an employee of defendant known as a "drayman" was placed in a garage storeroom where the salesman kept the unsold merchandise until ultimate sale or reclamation by the defendant. The storeroom was in the neighborhood of the plaintiff's route. Plaintiff had a key to this storeroom, as did the drayman who delivered the merchandise.

6. Defendant, through its officers, advised plaintiff Bell that he could artificially divide the number of sales transactions reported each day on his daily collection report, so as to reflect a minimum of forty separate sales transactions per day, even though this might mean that one sales transaction would be reported as two or more sales transactions.

7. Upon delivery of the merchandise, the customers paid to the Salesman the price of the merchandise and he wrote upon a "House Card" in his handwriting a receipt for the amount paid and this card was retained by the customer. The Salesman recorded on a printed form, called "Form 50" the amount and date of such collections, and this latter form was retained by the Salesman. In remitting these collections to the Company, the Salesman turned into the Company a record, called "Form 1" and styled "Daily Collection Report", with remittance to the Company of the amount shown on that report.

8. In June 1952, the defendant Company made an audit of the Salesman's records and claimed the audit showed a failure on the part of plaintiff to remit $254, to the Company which was due

Plaintiff's contract of employment contained the following provisions relative to shortages:

"In the event a dispute arises as to the correctness of any customer's account balance and the Salesman has failed to keep the customer's receipt record properly posted as set forth in 'Jewel Guideposts', the Salesman authorizes the Company to adjust such dispute with the customer as best it can and any allowance made or credit given in reduction of the customer's balance will be chargeable to the Salesman and shall be immediately due and payable.

"All shortages shall be immediately due and payable by the Salesman to the Company and a sworn written statement of the status of his accounts, as disclosed by the Company's books and records, shall be admissible in any action to enforce liability as competent and prima facie evidence of the existence and amount of the shortages."

9. Pursuant to the terms above, plaintiff paid $254, the amount defendant company alleged he was short in his accounts.

10. In December, a consignment of merchandise was delivered to plaintiff Bells' storeroom, and the drayman who delivered the stock of goods, failed to return defendant's copy of the load sheet or invoice. Defendant notified plaintiff that its copy had not been returned and when it was not returned, defendant company officials and auditors made an examination of plaintiff's records and his

storeroom and on December 12, 1952, notified plaintiff that the audit revealed a shortage in the accounts as of that date in the amount of $1,492. In making this examination, many of the customers on plaintiff's route were interrogated about orders plaintiff had taken from them and the amounts they had paid him.

11. Plaintiff examined the records from which the alleged shortage occurred and subscribed the front page of the records examined by him at that time. He later requested another examination and audit to be made to confirm or refute the findings of the prior one. Defendant subsequently reduced the amount of the alleged shortage by $194.01. Defendant also made an examination and audit December 20, 1952 of the eight days between December 12 and December 20, 1952. It then alleged that there was a further shortage accruing during that period amounting to $178.17. Plaintiff refused to examine this last statement of the alleged shortage and advised the defendant company that he desired to terminate his employment with the company.

12. Defendant, through its officers, verified the fact that plaintiff's Form 50's accurately reflected the receipts recorded on his customer's House Cards.

13. Upon plaintiff's notice of the termination of his employment, defendant forfeited his bond of $152.26 and one week's pay, because of the lack of notice of the termination, and applied these sums to the alleged shortage.

14. Defendant company divulged the facts of plaintiff's alleged shortage and separation from its employ to Mr. Leo T. Wolford, its Attorney and on said Attorney's advice the matter was submitted to the Jefferson County Grand Jury. An indictment was returned against plaintiff on a charge of embezzlement. He was arrested by two plain-clothes men at his new job as floor salesman for Kaufman Straus Company.

Upon trial, a jury acquitted plaintiff Bell of the charge set forth in the indictment. Plaintiff Bell then brought this suit against defendant company, alleging malicious prosecution and the Company has counterclaimed against him for $1,255.88, the amount of his alleged shortage.

15. The statement made by the defendant to its Attorney, in regard to the conduct and alleged shortage in the accounts of the plaintiff, adequately revealed the facts upon which the Attorney's recommendations were founded. There is nothing irregular in the manner in which the defendant presented the facts in regard to plaintiff's alleged shortages to the Commonwealth for prosecution. Defendant made no untrue or misleading representations in regard to the plaintiff's character and reputation to its Attorney in the submission of the facts leading to the indictment.

16. Plaintiff testified that although the drayman who delivered the merchandise to his stock room had a key and could therefore enter the stock room during plaintiff's absence, plaintiff did not contend that any shortage arose from merchandise being taken from the stock room.

Defendant's Auditor, J. A. Rohrer, testified that he checked everything that was charged to plaintiff, "every scrap of paper, every charge, every credit to make sure that he (plaintiff) had gotten the right amount of credit and not charged too much." He stated that his audit was complete and everything verified and found correct.

Every record used in the audit was filed here and made available to plaintiff and his Counsel, except some of the Form 50 records (which were plaintiff's private records) and plaintiff made no contention that the records on the "Form 50's" were not correctly reflected on the audit.

The net amount of the shortage according to the audit was $1,255.88, after allowing plaintiff credit for the amount of his bond and one week's salary.

17. Floyd R. Woodruff, Branch Manager of defendant company at Louisville, in December 1952, after an audit had been completed December 12, 1952, took

the complete audit to plaintiff and said that; "Mr. Bell checked and verified all of the customers' accounts and merchandise on 12/12/52". This audit was filed and it bears the plaintiff's initials and those of the witness, Woodruff.

The plaintiff also testified about Woodruff's visit. They had the Company's books and records. When the second audit was presented to him about December 20, 1952, he declined to go over it and notified Mr. Woodruff that he was severing his relations with the Company.

At the trial neither the plaintiff nor his Counsel questioned the audit or the records which were filed. Plaintiff stated that he didn't believe he was short, but couldn't demonstrate from his own or the Company's records any mistake in the audit.

The Court therefore finds that the audit correctly reflected the status of plaintiff's account with the Company and he was indebted to the Company in the sum of $1,255.88 December 20, 1952.

### Conclusions of Law

1. The evidence does not show sufficient facts from which malice may be inferred. Defendant had probable cause for its actions.

The test of probable cause in Kentucky, as set forth in the case of Sills v. Paducah Box & Basket Co., 251 Ky. 783, 66 S.W.2d 24, 25, is stated as follows:

"* * * Were the facts and information on which appellee's officers acted sufficient to induce a man of ordinary prudence to believe that appellants were guilty of the offense for which they were arrested?"

In that case, the officers of defendant corporation had discovered certain tools and equipment in plaintiff's possession, which appeared to be the same as those missing from their plant where plaintiff was employed. There the plaintiff, as here, was held to the grand jury and on trial acquitted. The Court said:

"We shall put no stress on the fact that appellee acted on the advice of its attorney. We shall assume that appellee's officers were mistaken in concluding that the forms and crimpers were appellee's property. After doing this, we find the following situation: Appellants, while in the employ of appellee, began the manufacturing of baskets. When appellee's officers went to appellants' working place, they found several pieces of core lumber, which, the evidence shows, belonged to appellee. They also found a tack keg that was the property of appellee and this keg was partly filled with tacks of the same kind the appellee used. On these facts, which are proven beyond controversy, appellee's officers acted, and had the right to act."

In the case at bar, the plaintiff had been short in his accounts previously and had made restitution; papers belonging to defendant, which had been in the possession of plaintiff had disappeared. Plaintiff resigned his position while the shortages were being investigated and failed to make a careful inspection and investigation of the records to disprove the charge against him, after the final audit was made.

Defendant's Attorney, after having the material facts presented to him, gave the defendant company an opinion in writing that there were reasonable grounds for referring the matter to the Commonwealth Attorney's office.

In the case of Hendrie v. Perkins, 240 Ky. 366, 42 S.W.2d 502, 504, the Kentucky Court of Appeals stated:

"It is a rule in this state that whether certain facts constitute probable cause is a question of law for the court, but whether such facts are proven is a question for the jury. * * *

"Under our law advice of counsel is not a defense to an action for malicious prosecution unless all the facts bearing on the guilt of the accused, known or ascertainable by reasonable inquiry, were fully and fairly disclosed."

The reasonableness of the actions of the defendant's officers and its legal counsel must be tested in the light of all the evidence, of which they were aware, which included a previous shortage, for which restitution was made, the loss of certain papers belonging to defendant and the resignation of plaintiff while under charge of being short in his accounts.

Actions of malicious prosecution are not favored in the law, since public policy favors the exposure of crime. Bazzell v. Illinois Central Railroad Co., 203 Ky. 626, 262 S.W. 966.

In consideration of the record as a whole, the Court concludes—

I. Plaintiff is now and has been since December 20, 1952, indebted to defendant in the sum of $1,255.88.

II. This indebtedness arose out of the contract of employment between plaintiff and defendant, by the terms of which plaintiff agreed to account for and become responsible for the value of all the merchandise delivered by defendant to plaintiff's storeroom. An itemized statement of the merchandise was contained in the inventories or load sheets accompanying such deliveries.

III. When the shortage of $1,255.88 was discovered by defendant, the facts relative to the shortage were made known to its Attorney, a capable, experienced and responsible lawyer, by the defendant. Upon his advice and with his assistance, the matter was submitted to the Grand Jury of the Jefferson Circuit Court. Defendant had submitted to its Attorney all of the facts known to it, material to and affecting the shortage.

IV. The indictment was returned by the Grand Jury and upon arraignment thereon, the defendant entered a plea of "not guilty" and a trial jury so determined the case.

V. The defendant had probable cause for instituting the prosecution and had a legal right to rely upon the advice of its Counsel.

VI. Plaintiff's complaint should be dismissed and judgment should be entered in favor of the defendant on its counterclaim against plaintiff in the sum of $1,255.88.

Defendant's Counsel will submit judgment in accordance with these conclusions within ten days herewith, upon notice to plaintiff's Counsel.