## Davis v. Brady.

(Decided February 18, 1927.)

### Appeal from Jefferson Circuit Court (Common Pleas, Third Division).

1. Malicious Prosecution—Actions for Malicious Prosecution are Not Favored and Must have Substantial Basis.—Actions for malicious prosecution are not favored in law; hence all essential requisites to fasten liability on defendant must have a substantial basis for their support under proven facts.

2. Malicious Prosecution—To support Action, Defendant Must Have Maliciously and Without Probable Cause Instituted Prosecution Terminated in Plaintiff's Favor.—To support action for malicious

prosecution, defendant must have caused judicial proceeding to be instituted against complainant, charging him with guilt of crime or misdemeanor, which proceeding must have been terminated favorably to complainant by trial or nolle prosequi or, adversely to plaintiff through corruption or fraud of defendant, and defendant must have been actuated by malice, and must have acted without probable cause for belief in guilt of complainant.

3. Malicious Prosecution—Malice May be Presumed from Absence of Probable Cause.—Malice, in the institution of criminal proceeding against plaintiff, may be presumed, in the absence of probable cause wthout actual proof.

4. Malicious Prosecution—Where Facts are Disputed, Probable Cause is Question for Jury.—Where facts are disputed, question of probable cause is one for determination of jury; otherwise it is question for court.

5. Malicious Prosecution—Evidence Held to Show Probable Cause for Prosecution Under "Cold Check" Statute (Ky. Stats., Section 1213a).—In action for malicious prosecution, evidence that complainant, in violation of Ky. Stats., section 1213a, after drawing check, had otherwise depleted bank account to extent that check was not paid for want of sufficient funds, held sufficient to show probable cause for institution of proceedings against complainant.

6. Malicious Prosecution—Advice of Counsel is Sufficient to Establish Probable Cause.—Evidence that defendant, in action for malicious prosecution, submitted the facts known to him to a reputable attorney, and that the latter advised the proceeding against complainant, is sufficient to establish probable cause.

7. Malicious Prosecution—Dismissal of Prosecution on Payment of "Cold Check" Held Not Favorable Termination, Sustaining Action for Malicious Prosecution (Ky. Stats., Section 1213a).—In action for malicious prosecution, evidence showing that proceeding against plaintiff under "cold check" statute (Ky. Stats., section 1213a) had been terminated by agreement of parties on complainant's payment of check held insufficient to show that proceeding had been terminated favorably to complainant.

HUBBARD & HUBBARD and JAMES W. GARRISON for appellant.

J. VERSER CONNER and BOOTH & CONNER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and plaintiff below, Mrs. E. Lula Davis, filed this ordinary action in the Jefferson circuit court against appellee and defendant below, W. J. Brady, seeking to recover of him damages for an alleged malicious prosecution instituted against her by defendant's son and agent, under the provisions of section 1213a of the present Kentucky Statutes, commonly known as the

"cold check" statute. The answer was a denial, and at the close of plaintiff's testimony defendant moved for a peremptory instruction in his favor, which the court overruled, and a similar motion by him at the close of all the testimony shared a like fate. The court then submitted the case to the jury under 16 instructions, and it returned a verdict in favor of defendant, followed by a judgment dismissing the petition, and plaintiff's motion for a new trial was overruled, and she prosecutes this appeal, complaining chiefly of the instructions submitted to the jury. But, since we have concluded that defendant's motion for a peremptory instruction should have prevailed, it will not be necessary to determine the questions raised by plaintiff's counsel in their criticism of the instructions under which the case was submitted.

In the three recent cases from this court of Bazzell v. Illinois Central Railway Co., 203 Ky., 626: I. C. R. R. Co. v. Anderson, 206 Ky. 600, and J. B. Colt Co. v. Grubbs, 206 Ky. 809, we said that actions of this kind were not favored by the law, and held, in substance, that all of the essential requisites to fasten liability on the defendant should have a substantial basis for their support under the proven facts. The holding in those three cases is supported by numerous prior ones in this court, and is in accord with the general rule upon the subject as declared by courts and text writers generally. 38 C. J., page 385. para. 2, and 18 R. C. L., page 11, para. 2. The reason for the rule is, that to sustain the action in all cases where plaintiff was acquitted or discharged in a criminal prosecution inaugurated by defendant in the action would serve as a deterrent to the enforcement of the criminal law, since the prosecutor would hesitate to set the criminal law in motion if he was rendered liable for damages unless the prosecution should be successful, and public policy required that one should not be so penalized in his efforts to enforce violations of the law while acting as a reasonably prudent man.

In stating the rule the text in Corpus Juris says: "It is generally declared that actions for malicious prosecution are not favored, especially where the charge is of a crime which particularly affects the public. Public policy favors prosecutions for crimes and affords such protection to the citizen causing the prosecution of another in good faith and on reasonable grounds as is essential to public justice, without the sacrifice of the right to the in-

dividual;" while the author of R. C. L. in stating the rule uses this language: "The action for malicious prosecution is not favored in law, and hence has been hedged about by limitations more stringent than those in the case of almost any other act causing damage to another, and the courts have allowed recovery only when the requirements limiting it have been fully complied with. The disfavor with which the action is looked upon is especially marked in cases where the suit is being brought for the institution of criminal proceedings against plaintiff. as public policy favors the exposure of crime, which a recovery against a prosecutor obviously tends to discourage."

The cases in the notes to the texts demonstrate that the rule as so stated is almost if not entirely universal. Notwithstanding, however, the existence of the rule, one is not permitted to maliciously and without probable cause procure the arrest of another under a criminal charge, and whenever the arrest is so made and the criminal prosecution has been terminated by final trial, or dismissal by the prosecuting authorities or by the prosecutor himself, and without the voluntary procurement of the defendant in the prosecution (the plaintiff in the malicious prosecution suit) an action will lie based upon the two essentials of. (a) malice in the institution of the prosecution, and (b), that it was done without probable cause, and the first essential may be presumed from the absence of the second one without proof of actual malice. So that, the four prerequisites to the sustaining of the damage action, as stated in the case of Graziani v. Ernst. 169 Ky. 751, are : "(1) That the defendant caused a proceeding, judicial in its character, to be instituted against the complainant, in which he is charged with the guilt of a crime or misdemeanor; (2) that the proceeding has terminated favorably to the complainant, either by a trial or a *nolle prosequi* or if adversely to plaintiff, it was procured by the corruption or fraud of defendant; (3) that the defendant was actuated by malice in instituting or conducting. the prosecution; (4) that the proceeding was instituted without probable cause for belief in the guilt of the complainant of such crime or misdemeanor." It is contended by learned counsel for defendant that neither of them was shown in this case, but since we have concluded that requisites (2) and (4) are wanting, it will be necessary to discuss neither of the other two or more than one of those found to be wanting.

The Grubbs case *supra,* and those of Schott v. Indiana National Life Insurance Co., 160 Ky. 533, and C. N. O. & T. P. Railway Co. v. Beddow, 189 Ky. 140, following the general and universal rule on the subject, held that where the facts are disputed the question of probable cause is one for the determination of the jury under proper instructions; but, where the facts are undisputed probable cause is a question for the court. In this case the essential facts bearing upon that prerequisite are undisputed, and they, in substance, are: That on Saturday afternoon, January 25, 1924, plaintiff issued her check for $67.50 payable to defendant, and drawn on the National Bank of Kentucky, located in Louisville. It was sent to and received by defendant's son in payment of one month's rent of an apartment occupied by plaintiff from January 17 to February 17, 1924. On the day the rent was due plaintiff declined to pay the advanced monthly installment, and declared her purpose to vacate the premises. She was notified that if she did not pay she must vacate, and after the expiration of several days a forcible detainer writ was sworn out by defendant's agent. When that was served on plaintiff she notified the agent that she would pay the rent and subsequently mailed the check and the forcible detainer proceeding was dismissed. The agent made his deposits in his bank each Saturday, and did not do so on this occasion until the next Saturday, after he received plaintiff's check. Within a day or so he was notified by his bank that the one upon which it was drawn had turned it down for want of funds. He then went to the justice of the peace before whom he had instituted the forcible detainer proceedings, and, as he says, left the check with that officer to collect it pursuant to a course of dealing between him and the officer theretofore engaged in. Before leaving, however, the young lady clerk of the justice asked him to sign a paper, which he testified he did without reading it, supposing that it was authority for the magistrate to collect and receipt for the payment of the check. It turned out, however, to be a blank affidavit upon which the justice issued the warrant complained of. A constable served it on plaintiff, and within three-quarters of an hour she appeared before the justice and executed bond with the understanding that there would be a hearing on the next afternoon. At that time plaintiff with her counsel appeared and made known the fact that she had deposited enough money in her bank which with the amount already

there was more than sufficient to take care of the check, and upon that information received from the bank, the justice entered on his docket this order: "Commonwealth of Kentucky v. Mrs. E. Lula Davis, uttering a worthless check 1924, February 8th; *by agreement of parties hereto case settled by defendant paying the check,*" and the check was paid on presentation. It furthermore appeared that at the time the check was signed and mailed to defendant's agent plaintiff had enough money to her credit in the bank upon which it was drawn to meet it, but between that time and when it was presented to the bank she had drawn other checks on the same bank so as to reduce her deposit below the amount for which the check was made.

The section of the statute creating the offense for which plaintiff was arrested (1213a) requires that the drawing of the check shall be for a fraudulent purpose, with the knowledge at the time that there was not sufficient funds in the bank upon which it was drawn to pay it; or, that the drawer of the check after uttering or delivering it drew other checks upon his deposit, not leaving enough money in the bank on which the original check was drawn to pay it, in either of which cases the offense is committed, and the last literary paragraph of the statute says: "The making, drawing, uttering or delivering of such check, draft or order as aforesaid, shall be *prima facie* evidence of intent to defraud." Whether that paragraph applies *only* to the original drawing of the check or draft and *not* to the subsequent reducing of the deposit not leaving enough to meet the originally drawn check we need not determine; for, if it applies only to the one and not to the other then the mere fact of subsequent withdrawals would render the drawer of the check liable to prosecution. On the other hand, if the *prima facie* presumption should be construed so as to apply both to the original drawing as well as the intent and purpose of subsequent withdrawals whereby the deposit was reduced below the amount of the check as originally drawn, then the facts of this case, under the very terms of the statute, created a *prima facie* presumption of plaintiff's guilt of the offense for which she was arrested.

It is universally the rule if the defendant in a malicious prosecution action submits the facts known to him to a reputable attorney and the latter advises the arrest, such advice will constitute probable cause, and which

rule is so well settled as to require the citation of no cases or authorities in support of it. If, therefore, in this case defendant's agent had submitted the facts to an attorney we can scarcely imagine what other advice he could have given, except that under them plaintiff was both technically and *prima facie* guilty. It will be observed that there is no requirement in the statute for the prosecutor to notify the drawer of the check of its being dishonored for want of funds to pay it. It is, therefore, clearly apparent to us that there existed probable cause for the issuing of the warrant of arrest in this case, even if the defendant is liable for what his agent did in the premises, and if we should further concede that the latter is responsible for the issuing of the warrant, but which he denied under the facts stated *supra*.

Briefly noticing requisite (4) *supra, i. e.,* the proper termination of the criminal prosecution, it will be observed that the order made by the justice recites, in substance, that it was done by agreement because plaintiff agreed to and did pay the check. We held in the case of Commonwealth v. McCall, 186 Ky. 301, that the arrested defendant in such prosecutions should not be tried until after the expiration of the 20 days provided by the statute within which time he might make payment of the fraudulently drawn check or draft, and we, of course, also held therein that if such payment should be made at any time within that period the prosecution would necessarily terminate, and, to use the language therein employed, the prosecution would then "be blotted out." The plaintiff did so in this case by her voluntary act in providing funds for and paying the check. There was no dismissal at the instance of defendant's agent, or at the instance of the prosecuting officer, or by the justice of the peace after the hearing of the evidence on the merits, or otherwise; and under such circumstances there was no such termination of the criminal prosecution as is necessary to sustain an action for malicious prosecution. 18 R. C. L. 25, para. 13, 38 C. J. 433, para. 95, and Singer Sewing Machine Co. v. Dyer, 156 Ky. 156.

We, therefore, conclude that the court erred in not sustaining defendant's motion for a peremptory instruction in his favor, and since the jury returned a like verdict under the instructions of the court there is no occasion to inquire whether those instructions were or not proper.

Wherefore, the judgment is affirmed.