## Lexington Cab Co., Inc., et al. v. Terrell.

Feb. 23, 1940.

King Swope, Judge.

Keenon & Kessinger for appellants.

R. J. Colbert for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On July 26, 1935, the appellee and plaintiff below,

John Addison Terrell, purchased a Pontiac 1935 model automobile, the deferred payments on which aggregated $782.72, which was the net purchasing price after deducting an allowance for an old automobile taken in by the seller. That balance was divided into sixteen monthly payments of $48.92 each, and the written contract evidencing the sale and all agreements in connection therewith retained title in the automobile until all of the deferred payments were made. But few of them were made and plaintiff, the purchaser, defaulted, which resulted in refinancing the transaction with another concern, known as the Lexington Finance Corporation. The contract with the latter company, by which the purchase was refinanced, was in the nature of a mortgage given to it on the automobile to secure the reduced monthly payments extending over a longer period of time agreed to between the parties under that contract. However, it purported to retain title in the purchaser as though that contract was an original sales contract made by that company as the seller.

Plaintiff defaulted in making payments to the latter company and upon complaint by it because of plaintiff's defalcations he orally agreed and did deliver the possession of the automobile to it, a chief officer of which was a Mr. Ed Houlihan. The latter, and the plaintiff, do not agree in their testimony as to the terms upon which the possession of the automobile was delivered to Houlihan as representative of the Lexington Finance Corporation—plaintiff contending that in doing so he merely constituted the Finance Corporation his trustee or agent to sell the automobile and after satisfying its mortgage debt then to pay the balance, if any, to him; whilst Houlihan stated that plaintiff turned the automobile absolutely over to him in satisfaction of the finance corporation's total indebtedness, amounting to something like $635, with possibly some accumulated interest.

At any rate, Houlihan, upon receiving possession of the automobile, placed it in a garage in the city of Lexington known as "City Hall Garage," which was owned and operated, as shown by the testimony, by a Mr. Marion C. Custard, the daily operator and apparent manager of which was the defendant and appellant, Walter Hiteshugh. At the time of delivering the automobile to the garage Houlihan instructed Hiteshugh to

let no one take it out except himself, or someone designated by his principal, the Lexington Finance Corporation.

About two years prior to the transaction out of which this litigation grew the defendant and appellant, Lexington Cab Company, rented an entire building in the city of Lexington, consisting of a basement and two or more stories in height, to which it moved and thereafter conducted its business of operating busses upon the streets of Lexington as a carrier of passengers to different parts of the city. At that time one of the ground floor rooms of that building so leased by the Cab Company was occupied by a concern known as "City Hall Garage," but by whom it was then so conducted is not shown by the record. However, the Cab Company, after it moved into and took charge of that building on October 30, 1935, subleased a part of it to "Marion C. Custard, doing business under the firm name of 'City Hall Garage.' "—the part so subleased being the basement and the first floor, with the reserved right of the Cab Company "to use the first floor of said building free of charge, for the storage of any and all Packard equipment owned by the first party and to store and park, free of charge, an overflow of taxicabs owned or operated by first party." It was proven by defendants—and we think uncontradicted by any substantial testimony—that Custard continued to operate the garage thereafter up to and including the time of the transaction here involved, and which embraced the date that Houlihan delivered the automobile to the garage.

On April 4, 1936—slightly less than two months from the time the garage received the automobile from Houlihan—plaintiff and his attorney, Henry T. Duncan, Jr., appeared at the garage and inspected the automobile without saying anything to Hiteshugh, who was then present. They then left, returning, however, within an hour thereafter. Upon their return trip plaintiff got in the automobile and started out of the garage, himself driving it and picking up Duncan, who was somewhere about the front entrance, when Hiteshugh discovered what was being done and he rushed to the automobile and protested against carrying it away without the consent or direction of Houlihan, or the Finance Corporation, and suggested that Houlihan be called over the

phone, when both plaintiff and his attorney declined to communicate with him or to await any communication with him by Hiteshugh, but immediately drove away— later depositing the automobile in a different garage in the city and in the name of Duncan, the attorney.

The defendant and appellant, Leroy Smith, was secretary and treasurer of the Cab Company and as such had an office, either in some part of the room occupied by the garage, or on some other floor of the entire building rented by the Cab Company. Custard was absent and could not be located by Hiteshugh; whereupon he consulted defendant Leroy Smith, who was and is a brother-in-law of Custard, telling him what had happened, and Smith advised him to consult with an attorney, since Hiteshugh had correctly told him that he knew neither of the parties who carried away the automobile, nor did they inform him as to their intentions in the premises, except plaintiff claimed that Duncan stated to Hiteshugh when the car was taken away that his client was the owner of it; but it is not claimed that the name of the client was given, nor did the attorney give his name to Hiteshugh. The latter denied that either the attorney or his client stated on that occasion that the latter was the owner of the automobile, nor did Hiteshugh know at that time the extent of the interest, if any, that the Finance Corporation had in and to the automobile. The only thing he ever knew was that the Finance Corporation, through its agent and representative, Houlihan, delivered the car to the garage for storage.

Following the suggestion of the defendant, Leroy Smith, Hiteshugh consulted the Hon. Harry Miller, who was attorney for the Cab Company, and told him in substance the facts we have related, but, perhaps, with greater detail. Miller said: "I know nothing else to do but get out a John Doe warrant." Hiteshugh then went to a justice of the peace in Lexington by the name of Boone and made affidavit based upon the facts stated, when the justice issued a warrant against John Doe charging him with grand larceny. Later in the afternoon the name of the plaintiff, as the driver of the car when it was taken away from the garage, was learned and his name inserted in the warrant in lieu of the fictitious one of John Doe. In the meantime—and some-

·where near 4 o'clock in the afternoon of that day—two policemen went to the home of plaintiff to arrest him under the warrant, but he was absent. On his return home he learned of their visit and called up the police office and notified them that he was then at his home, where they went and arrested him, carrying him to the police office, and he testified that he was then and there imprisoned (presumably in the city jail) for about one hour, when he executed bond for his appearance for trial on the following Monday, April 6th, the date of the arrest being Saturday, April 4th. On that day Miller appeared and on his motion the warrant was dismissed at the request of Hiteshugh.

On October 17th thereafter this action was filed in the Fayette circuit court by plaintiff against the Lexington Cab Company, Hiteshugh and Leroy Smith, in which they were charged with maliciously instituting the prosecution against plaintiff without probable ·cause, and for the injuries sustained by him on account thereof he sought to recover damages therefor, which he stated in his petition to be the sum of $5,000. Defendants denied the material averments of the petition, affirmatively pleading probable cause, and also relying in a separate paragraph upon the advice of counsel as ·constituting probable cause. In addition to those defenses the Cab Company and Smith also relied on the subleasing of the garage to Custard under the written lease supra entered into with him and in which paragraph they averred that neither of them had any connection whatever with the operation of the garage, nor were they liable for any action taken by it or any of its agents or servants in preferring the charge against plaintiff and having him arrested. Following pleading made the issues and upon trial the jury returned a verdict in favor of plaintiff against all of the defendants for a total sum of $650 composed of $400 compensatory damages, and $250 punitive damages—the instructions of the court permitting the recovery of the latter item. Defendants' motion for a new trial was overruled, followed by this appeal.

In the motion for a new trial, as well as in briefs of counsel for appellant, a number of grounds are relied on as reversible errors, but we have concluded that

only one of them need be discussed and determined, and which is, error of the court in overruling defendants' motion for a peremptory instruction in their favor as based on the failure of plaintiff to disprove probable cause applicable to all of the defendants, and on the additional ground—as applicable to Smith and the Cab Company—of the subletting of the premises to Custard with whose business neither of the latter two defendants had any connection, nor did they in any wise participate in procuring the arrest of plaintiff.

The action, it will be perceived, is what is known as one of "malicious prosecution" which in law is a tort, and always consists in the defendant therein maliciously and without probable cause setting in motion the laws of the particular jurisdiction whereby plaintiff in such an action is wrongfully and maliciously accused of committing some criminal offense, or committing some other wrong justifying the particular procedure taken against him, though it be a civil one, and by reason of which he sustained the damages he seeks to recover. It is not necessary for us to enter further into a definition, emphasizing the different elements essential to create a right of action for malicious prosecution, further than to say that there must always exist malice on the part of the defendant in procuring or bringing about the unfounded prosecution or other action. But the action (malicious prosecution) is never sustainable unless defendants' instigating connection with the prior litigation (either criminal or civil) was without probable cause, for if there exists probable cause, then howsoever maliciously the prior litigation might have been instituted by defendant no malicious prosecution action is sustainable. See Duerr v. Kentucky & Indiana Bridge Railroad Company, 132 Ky. 228, 116 S. W. 325, and 18 R. C. L. page 33, section 19, notes 12 and 13. If the proof shows the want or absence of probable cause, then the necessary malice to sustain the action may be inferred from that fact, but the advice of counsel—when honestly obtained by stating the relevant facts within the knowledge of defendant—is conclusive proof of probable cause. See Emler v. Fox, 172 Ky. 290, 189 S. W. 469, and Chesapeake & O. Railway Company v. Faverty, 212 Ky. 140, 278 S. W. 551, and cases referred to therein, together with others found in volume 13

West's Kentucky Digest, under the subject of "Malicious Prosecution", 21, 22.

In applying the foregoing principles to the facts of this case it should be done by keeping in mind that: "The action for malicious prosecution is not favored in law, and hence has been hedged about by limitations more stringent than those in the case of almost any other act causing damage to another, and the courts have allowed recovery only when the requirements limiting it have been fully complied with. The disfavor with which the action is looked upon is especially marked in cases where the suit is being brought for the institution of criminal proceedings against the plaintiff, as public policy favors the exposure of crime, which a recovery against a prosecutor obviously tends to discourage." 18 R. C. L. 11, section 12. Many cases substantiating that text are listed in note 11 thereto. The declared principle of the excerpt is a most wholesome one and should ever be kept in mind by the courts in dealing with this character of action, since it is the duty of every upright citizen to desire and assist in the enforcement of the laws and to not be deterred therefrom by an over-hanging Damocles sword threatening him with a suit for damages, unless it be clearly and unequivocally shown that he acted without probable cause as hereinbefore defined, and consequently maliciously in the part he played in the attempted enforcement. Therefore, we approach the determination of the cause in the light of the law's disfavor as set forth in the inserted text.

Hiteshugh was not an attorney and while he was required to make an honest statement of all relevant facts to his consulted attorney the witness, Miller, in fulfilling that duty he was only required to act as an ordinarily prudent man would do under the same or similar circumstances occupying the same position that he did at that time. See the case of Lancaster v. McKay, 103 Ky. 616, 45 S. W. 887, for a list of definitions of "probable cause" sufficient to defeat a later action of malicious prosecution. Hiteshugh's position upon the specific occasion was that of the immediate custodian of the involved automobile as the depository of it from or by the Lexington Finance Corporation to whom plaintiff had voluntarily delivered it; but the terms of

that delivery were unknown to Hiteshugh. His instructions from the bailor were to let no one have or take out the car, except Houlihan or some other representative of the bailor, the Lexington Finance Corporation. Both plaintiff and his attorney were entire strangers to Hiteshugh, and even though he may have been informed that plaintiff claimed to be the owner of the automobile, still he was furnished with no evidence establishing that fact, nor was he informed of any available source through and by which that fact might be established as so represented to him. Even if such fact could have been established by examining the court records in the county clerk's office of Fayette county, yet Hiteshugh had no information whereby he might make a successful examination to ascertain that fact, since he was entirely unaware of the name of the plaintiff when he and his attorney appeared at the garage and took the automobile away. He, therefore, stated to Miller all of the pertinent facts within his knowledge or which he stood in position to ascertain by the exercise of ordinary care and diligence. Therefore, under the cases supra—and many others that might be cited to the same effect—the advice obtained from the witness Miller, furnished probable cause for the issuing of warrant for the arrest of plaintiff, who, so far as Hiteshugh was concerned, took the automobile after the fashion and manner of one in the commission of larceny —not even waiting until the Finance Corporation might be consulted over the telephone by Hiteshugh but which he offered to do at the time.

It should also not be overlooked that when the automobile was deposited in another garage it was not done in the name of the owner, but in the name of one who was an entire stranger to its title, and who claimed no interest whatever in it—all of which combined with other facts and circumstances in the case lead unerringly to the conclusion of a determination to possess the automobile by taking it away from the garage, its rightful custodian, by force and not by any peaceable method provided by law.

The above recited facts (as we have stated in reciting them) relating to subletting the garage to Custard was, as we have stated, not denied by anyone. The subletting was not only proven by the written lease, but

the fact of its being entered into was proven by three other witnesses, and the only testimony relied on to avoid the effect of that overwhelming proof was the fact that defendant, Leroy Smith, in talking to plaintiff's attorney by telephone, following the issuing of the warrant, used the possessive pronoun in his statement to them that "We want the automobile returned." Smith explains that Custard was absent. He was Smith's brother-in-law, as well as tenant of his corporation, the Cab Company, and he had been applied to by Hiteshugh as to what should be done in the premises following the taking of the automobile from the garage. The other fact relied on, as combating the subletting theory, is the fact that the Cab Company had collected a lump sum refund from the Lexington Gas Company which had accumulated by excess payments of gas bills in the City of Lexington, at the end of a litigation concerning the proper charges that the gas company could make and collect from its customers. The Cab Company had a number of sub-tenants for portions of the building it was renting and for whom it appears to have paid all gas bills and would then collect from each sub-tenant his proportionate part, and that course was followed in the collection and distribution of the Cab Company's part of the impounded fund after the litigation over the gas charges was terminated. We do not think that those two circumstances possess suffiicient probative effect to overcome the positive testimony that the garage from which the automobile was taken was operated by Custard in the trade name of "City Hall Garage". See the Faverty case, supra. All other questions are reserved.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside, and for proceedings not inconsistent herewith; the whole court sitting.