491 F.2d 256
 Emmett C. WORLEY, Plaintiff-Appellee,
v.
COLUMBIA GAS OF KENTUCKY, INC., Kentucky Gas Transmission
Corporation, Defendants-Appellants.
Emmett C. WORLEY, Plaintiff-Cross-Appellant,
v.
COLUMBIA GAS OF KENTUCKY, INC., et al., Defendants-Cross-Appellees.
Emmett C. WORLEY, Plaintiff-Appellee,
v.
MUTUAL PIPELINE CONTRACTORS, INC., et al., Defendants-Appellants.
 Nos. 73-1204, 73-1205, 73-1207.
 United States Court of Appeals, Sixth Circuit.
 Argued Oct. 3, 1973.
Decided Dec. 27, 1973, Rehearing Denied Feb. 1, 1974.
 
 Joseph L. Arnold, Lexington, Ky., and Thomas E. Morgan and H. Raymond Andrews, Jr., Charleston, W. Va., on brief, for Kentucky Gas Transmission Corporation and Columbia Gas of Kentucky, Inc.
 Arthur L. Brooks, Lexington, Ky., and Leslie W. Morris, II, Stoll, Keenon & Park, Lexington, Ky., on brief, for Mutual Pipeline Contractors, Inc., John T. Dix and Chester Nowicke.
 David C. Graves, Jr., Lexington, Ky., on brief, for Emmett C. Worley.
 Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.
 WEICK, Circuit Judge.
 
 
 1
 Mutual Pipeline Contractors, Inc. (hereinafter referred to as Mutual), John T. Dix and Chester Nowicke (Mutual's principal officers), Columbia Gas of Kentucky, Inc. (hereinafter referred to as Columbia Gas), and Kentucky Gas Transmission Corporation (hereinafter referred to as Kentucky Gas Transmission), have appealed from a Judgment entered in the District Court against them in favor of the plaintiff Worley, in the amount of $800,000, on a complaint charging the defendants with conspiring to maliciously prosecute plaintiff Worley for the offense of issuing checks drawn on a bank, which checks were not paid because of lack of sufficient funds. In the testimony these checks were referred to as cold checks.
 
 
 2
 Motions were made by defendants for a directed verdict at the close of plaintiff's evidence, and were renewed at the close of all the evidence, and were denied by the Court. The Court submitted the issues to the jury which returned a verdict against all defendants, in the sum of $750,000 for compensatory, and $750,000 for punitive damages. The Court denied defendants' motions for judgments notwithstanding the verdicts, but granted their motions for new trials unless Worley agreed to a remittitur of $700,000 in the punitive damage award. Worley agreed and judgment was entered on the verdict in the amount of $800,000.
 
 
 3
 The principal error assigned by the appellants is that the Court should have directed a verdict in their favor. Worley appealed from the order of remittitur, although he had consented to it without protest.
 
 
 4
 Kentucky Gas Transmission is a Delaware corporation, authorized to do business in Kentucky. Columbia Gas is a Kentucky corporation, and is a public utility, subject to the jurisdiction of the Kentucky Public Service Commission, and is engaged in selling gas at retail in the Commonwealth of Kentucky.
 
 
 5
 The case arose out of the Kentucky Gas Transmission pipeline construction project in Brachin, Lewis and Mason Counties in Kentucky, in 1969. The prime contractor for construction of the pipeline was Mutual, whose major responsibility was to dig ditches for the pipe. Mutual awarded a subcontract to Worley, doing business as Inland Pipeline Construction Company, to do the work of bending, laying and welding the pipe furnished by Kentucky Gas.
 
 
 6
 The contract provided that Mutual was to be paid twice a month by Kentucky Gas, based on estimates prepared at the middle and end of each month. Worley was to receive payment from Mutual on a fixed price per foot. Worley's total expected payment for the contract was to be $158,000; he was also to be paid for extra work done beyond the terms of the contract. Worley needed funds to commence operations, and Mutual arranged to and did advance to him about $25,000, in two installments.
 
 
 7
 Problems immediately arose over welds made by Worley's employees, which welds were rejected by Kentucky Gas inspectors. Worley's position was that these rejects were due to faulty pipe; Kentucky Gas contended that the fault was in improper welding.
 
 
 8
 Originally, Worley was to be paid by Mutual after the estimate procedure with Kentucky Gas had been completed; however, because of the reject problem, a pattern developed in which Mutual was assisting in meeting Worley's payroll by making advances to Worley, often before payment by Kentucky Gas on the estimates.
 
 
 9
 On August 14, 1969 Worley opened a bank account with First Security National Bank and Trust Company in Lexington. Prior to this time Worley had been meeting his payroll on an account which he had with an Iowa bank.
 
 
 10
 Worley contended that Mutual, through Dix, promised him that he could write payroll checks as he saw fit, and that Mutual had made arrangements with First Security National Bank in Lexington, to cover such checks. Dix denied making any such promise. In addition Gerald Hodges, the bank official responsible for such arrangements, testified that he had no knowledge of any such authorization.
 
 
 11
 Mutual gave as the reason for their ceasing advances that they thought their prior advances reached the point where they were approaching Worley's total expected payment on the project. Indeed, Mutual claimed it had already paid Worley $60,000 beyond the contract price.
 
 
 12
 In August and September, 1969, Worley and other Inland officers issued 150 payroll checks totaling $34,000, which checks were dishonored by the bank for insufficient funds. Eleven of these checks were issued in August, the remainder in September. On September 10, 1969 the bank sent Worley a notice informing him of his balance and listing the returned checks. An additional notice was sent on September 12, 1969.
 
 
 13
 On September 13, 1969 Oral Curtis, a sawmill operator, personally contacted Worley concerning a lumber bill for $2,600, on which payment was overdue; thereupon Worley paid him with two checks post-dated September 27, 1969 and October 11, 1969, because Worley knew he had insufficient funds to cover such checks as of September 13th, the date of actual issuance.
 
 
 14
 More payroll checks were issued on September 13, 14, 15, 16, 17, and 18. Of the 150 checks written, some were signed by Worley himself, some were signed by his employee, Richard Given, and some were signed by his employee and son-in-law, Douglas Hammock. Most of the checks were for labor; some checks were for material furnished to Worley.
 
 
 15
 When Dix became aware of Worley's actions, he consulted an attorney, John H. Clarke, Jr., in Maysville, Kentucky, a town near the project site. Clarke advised Dix that under Kentucky law the payees of the cold checks issued by Worley could obtain mechanic's liens against the project, which liens Mutual would eventually have to pay off.
 
 
 16
 Clarke set up a procedure to pay off the checks in return for releases to prevent subsequent lien claims. Clarke began this payment program on September 18. On the preceding day Roy Clark, Patrick Sappington and Tommy Coker (all employees of Worley) brought their payroll checks to Clarke's office. Clarke told these men that in his opinion an offense had been committed and that they were entitled to obtain warrants. Sappington and Coker were willing to sign complaints, and Clarke took them to the courthouse.
 
 
 17
 The County Attorney presented the affidavits for warrants, sworn by these two men, to Mason Circuit Judge John A. Breslin, who issued warrants for Worley's arrest based on these two counts. On the same day a local merchant, Clyde Barbour, who had cashed sixteen payroll checks for Worley's employees, sought warrants. Judge Breslin also issued arrest warrants on affidavits signed by Barbour relating to these sixteen cheeks. There was no evidence that any of the defendants had anything to do with Barbour's pressing of charges against Worley.
 
 
 18
 Worley had been spending most of his time in Aberdeen, Ohio, but came into Kentucky on September 18th for a meeting of project participants, to discuss results of examination of the pipe. While at this meeting Worley was arrested and lodged in the Mason County jail, on the eighteen arrest warrants obtained by Sappington, Coker and Barbour. Worley claimed that the meeting was a subterfuge to get him into the state and county. Roy Clark, one of Worley's employees, testified that he had told Worley about the outstanding warrants on the very day they were issued, September 17th.
 
 
 19
 Worley was in jail from 3:00 p.m. on September 18, 1969 until 10:00 a.m. on September 20, 1969 when a preliminary hearing was held. Worley was bound over to the county grand jury on all eighteen warrants considered by the Judge on September 17th.
 
 
 20
 On September 22, 1969 the grand jury was in session. On this same day two other employees of Worley, James C. Lykins and Howard Moore, Jr., came to Clarke's office to obtain payment of cold checks issued to them on September 6, which they had been unable to cash at the bank. Following discussions with Clarke, Moore and Lykins went before the grand jury. Moore testified that he understood he would get his check cashed by Clarke regardless of whether or not he appeared before the grand jury.
 
 
 21
 The grand jury returned two indictments on the checks of Moore and Lykins. Worley was arraigned on these charges on September 22, 1969, but was released on his own recognizance, and spent no time in jail under these indictments.
 
 
 22
 On September 25, 1969 J. C. Penney Co. obtained two warrants for Worley's arrest for issuing cold checks.
 
 
 23
 Trial on Moore's and Lykins' charges was set for September 11, 1970. The indictment as to Moore was dismissed because the prosecuting attorney could not obtain Moore's presence. The indictment on the Lykins matter was tried to a jury and the defendant, Worley, was found not guilty.
 
 
 24
 No disposition has been made concerning the warrants which were obtained by Sappington, Coker and Barbour. These matters are still pending before the grand jury.
 
 
 25
 There are pending civil actions in other courts arising out of disputes between the parties. Thus, the final economic resolution of the contract controversy does not rest with this decision.
 
 
 26
 It is noteworthy that although Worley sued three corporations and the officers of one of them (Mutual) for conspiracy to maliciously prosecute him for issuing cold checks, he did not sue any of the holders of these cold checks, who signed the affidavits for warrants under which be was arrested and jailed, or who were responsible for his indictment.
 
 
 27
 We find there is not even a scintilla of evidence in the record that Columbia Gas ever conspired with the other defendants to maliciously prosecute Worley. It had no contractual relationship with Worley or with Mutual. Jimmy E. Sligh, who Worley claimed was an agent of Columbia Gas, was not employed by Columbia Gas but was an inspector for Kentucky Gas Transmission. There is no proof that Columbia Gas had anything to with either Worley's arrest or his prosecution. The District Court erred in denying its motion for a directed verdict.
 
 
 28
 Kentucky Gas Transmission's contractual relationship was with Mutual. Worley was Mutual's subcontractor.
 
 
 29
 Worley sought to tie Kentucky Gas Transmission into the alleged conspiracy by proof of the activity of its Chief Inspector on the pipeline project, Jimmy E. Sligh. Sligh was in charge of all inspectors on the pipeline project, and it was his duty to see that specifications and codes were adhered to and that all phases of the job were properly and correctly performed. He was not a welding inspector.
 
 
 30
 There was no proof that Sligh had actual or apparent authority from his employer, Kentucky Gas Transmission, to prosecute Worley for the cold checks which Worley issued to his own employees and materialmen.
 
 
 31
 The evidence on which Worley relied to prove Sligh's alleged participation in the conspiracy was that Sligh sat in the courtroom at the Lykins trial; the disputed evidence that Sligh attended a meeting in Attorney Clarke's office when Sappington and Coker signed affidavits for warrants for the arrest of Worley; and Sligh's conversations with Worley's employees, Roy Clark, Paul J. Schulien, Eugene Harness and Charles Kaufman.
 
 
 32
 There was no evidence that any affidavits for the arrest of Worley, or the indictment, were induced by or resulted from any of these conversations or incidents.
 
 
 33
 In our opinion, the District Court erred in denying the motion for a directed verdict filed by Kentucky Gas Transmission, for the reason that its inspector Sligh had no actual or apparent authority from his employer either to conspire to or to cause the arrest of Worley, and in fact, did not cause his arrest or indictment.
 
 
 34
 This disposition of the case determines the issue of conspiracy, because Mutual could not conspire with itself or with its own officers to prosecute Worley. Mutual could be liable only for acts of its officers on the theory of respondeat superior. The corporation can act only through its officers and agents. We will consider only whether there is substantial evidence to prove that Mutual, Dix and Nowicke are liable for malicious prosecution of Worley.
 
 
 35
 The remaining defendants assign numerous errors. Their basic contentions are that Worley failed to establish the elements of even a prima facie case of malicious prosecution. First, the defendants contend that Worley failed to show that they were the proximate and efficient cause of the prosecution. Second, they contend that Worley has failed to show that the prosecution, which allegedly caused his damages, had been terminated in his favor. Third, even assuming the first two arguments as rejected, it is asserted that Worley failed to show a lack of probable cause for his prosecution. Fourth, the defendants contend that advice of counsel is an absolute bar to a malicious prosecution action. Fifth, the defendants contend that the verdict was grossly excessive; that it resulted from passion and prejudice and the misconduct of plaintiff's counsel; and that it was tainted by the admission of incompetent evidence concerning the disputes between the parties, which disputes are the subject of various civil actions.
 
 
 36
 We consider first the question of whether there had been a termination of the prosecution which caused the alleged damages. Such a termination is required by Kentucky law. Freeman v. Logan, 475 S.W.2d 636 (Ky.1972); VanArsdale v. Caswell, 311 S.W.2d 404 (Ky.1958), and Conder v. Morrison, 275 Ky. 360, 121 S.W.2d 930 (1938).
 
 
 37
 The eighteen warrants issued by Judge Breslin on September 17, 1969 were still pending when this action was brought. The only charge that had terminated was the grand jury indictment based on Moore's and Lykins' testimony, returned on September 22, 1969, two days after Worley was released from jail upon his execution of a personal bond in the amount of $5,000. Worley did not spend time in jail on the Moore-Lykins indictment. He was not even arrested on the indictment. Worley's complaint alleges damages resulting from his imprisonment on September 18th to 20th, but this imprisonment was based on eighteen warrants that have not even begun to be processed through the legal system, let alone terminated.[1]
 
 
 38
 With respect to the terminated prosecution, Worley's alleged damages flowing from such action are his expenses of litigation. He was not arrested nor confined. It would hardly support a verdict and judgment of $1,500,000. Worley did not even claim any real business losses flowing from the Moore-Lykins indictment.
 
 
 39
 Even assuming that Worley could show that the defendants were the proximate cause of his prosecution, he would not be entitled to recover if there was probable cause to warrant the prosecution. Freeman v. Logan, 475 S.W.2d 636 (Ky.1972); Schott v. Indiana Nat'l Life Ins. Co., 160 Ky. 533, 169 S.W. 1023 (1914); McClarty v. Bickel, 155 Ky. 254, 159 S.W. 783 (1913). Worley had the burden of making a clear showing that there was no probable cause. Reid v. True, 302 S.W.2d 846 (Ky.1957) and Lexington Cab Co. v. Terrell, 282 Ky. 70, 137 S.W.2d 721 (1940).
 
 
 40
 There was a dispute in the testimony of Worley and Dix as to whether Mutual had ever agreed to advance funds to cover Worley's payroll checks. The bank in Lexington, on which the cold checks were drawn, was never informed by Worley of any such arrangement. It was Worley's burden to show clearly that Dix had agreed to advance funds to cover the payroll checks, and that Dix never changed his position, because only then could Worley show lack of probable cause. The mere conflict in testimony makes Worley's task almost impossible.
 
 
 41
 There are two Kentucky cases dealing with the issue of probable cause in cold check cases: Haseldon v. York, 271 Ky. 567, 112 S.W.2d 984 (1938), and Davis v. Brady, 218 Ky. 384, 291 S.W. 412 (1927). In Haseldon, supra, plaintiff York's check was refused payment for want of funds when Haseldon tried to negotiate it. Payment was refused a second time and thereafter York withdrew from the bank what funds he did have there. The Court found that probable cause existed on this set of facts and held that Haseldon's motion for a preemptory instruction should have been granted. In the present case, the checks that Moore and Lykins were attempting to cash had been refused payment. The checks in question were dated September 6, 1969 and it was September 22, 1969 before the two men went to the grand jury. Their inability to negotiate the checks at the bank clearly resulted in probable cause to think that an offense had been committed.
 
 
 42
 In Davis, supra, the plaintiff issued a check to the defendant's son (who was also defendant's agent) for rental payment. The son's usual practice was to make deposits at the end of each week. When the son deposited the check at the end of the week it was returned n.s.f. The son went before a Justice of the Peace and obtained a warrant. The plaintiff's attorney claimed that his client had sufficient money on deposit in the bank on the day she issued the check, but she drew other checks in the interim. The Court concluded that the only reasonable conclusion any attorney could reach was that a violation of the statute had taken place. The Court found that probable cause clearly existed for the issuance of a warrant. If the issuance of one check in this manner, knowing sufficient funds might not be on hand if presentment were delayed only shortly, is sufficient to establish probable cause, Worley's actions in writing checks which he had some reason to suspect might not be covered by Mutual, sufficed to show probable cause that a violation of the cold check statute had taken place.
 
 
 43
 Moreover, Lykins' case, which was the only one resulting in an acquittal, had come from an indictment by the county grand jury. In Jones v. Louisville & N.R. Co., Ky., 29 Ky.Law Rep. 945, 96 S.W. 793 (1906), the Court of Appeals stated:
 
 
 44
 'The true doctrine is that the finding by the grand jury is prima facie evidence of probable cause.' Ulman (Ullman) v. Abrams, (Ky.) 9 Bush. 738; Bruks v. Ferrell, (Ferriell) (Ky.) 80 S.W. 809, 26 Ky.Law Rep. 36; Lancaster v. Langston, (Ky.) 36 S.W. 521, 18 Ky.Law Rep. 299. (96 S.W. at 794).
 
 
 45
 The afficavits for the warrants were approved by the attorney who prepared them, by the County Attorney, and by the Circuit Judge who issued the warrants. The grand jury found sufficient evidence to return an indictment on two counts. At the trial the Circuit Judge submitted the issues to a jury for its determination.
 
 
 46
 The fact that Worley was acquitted on the Lykins charge does not show a lack of probable cause. Conder v. Morrison, 275 Ky. 360, 121 S.W.2d 930 (1938); Haseldon v. York, 271 Ky. 567, 112 S.W.2d 984 (1938); sills v. Paducah Box & Basket Co., 251 Ky. 783, 66 S.W.2d 24 (1933); Stephens v. Gravit, 136 Ky. 479, 124 S.W. 414 (1910).
 
 
 47
 Even if Worley had been able to establish a prima facie case, the defendants would have had an affirmative defense in that all recommendations for obtaining warrants came from an attorney. Under Kentucky law such advice of counsel is a complete defense to an action for malicious prosecution. Taylor v. Shepherd, 391 F.2d 263 (6th Cir. 1968); Puckett v. Clark, 410 S.W.2d 154 (Ky.1966); Mayes v. Watt, 387 S.W.2d 872 (Ky.1964); Bell v. Jewel Tea Co., 135 F.Supp. 745 (W.D.Ky.1955); Cravens v. Long, 257 S.W.2d 548 (Ky.1953); Lexington Cab Co. v. Terrell, 282 Ky. 70, 137 S.W.2d 721 (1940); Davis v. Brady, 218 Ky. 384, 291 S.W. 412 (1927); National Life & Acc. Ins. Co. v. Gibson, Ky., 31 Ky.Law Rep. 101, 101 S.W. 895 (1907); Tandy v. Riley, Ky., 26 Ky.Law Rep. 98, 80 S.W. 776 (1904); Farmers' & Shippers' Tobacco Whse. Co. v. Gibbons, 107 Ky. 611, 55 S.W. 2 (1900); Mesker v. McCourt, Kt., 19 Ky.Law Rep. 1897, 44 S.W. 975 (1898); Lancaster v. Langston, Ky.,18 Ky.Law Rep. 299, 36 S.W. 521 (1896).
 
 
 48
 In this case Attorney Clarke informed Moore, Lykins, Sappington and Coker that there was probable cause to obtain warrants. There is no indication in the record that Attorney Clarke was operating with insufficient facts on which to base his judgment.
 
 
 49
 The judgment of the District Court is reversed and the cause is remanded with instructions to dismiss the complaint. The cross-appeal of Emmett C. Worley is hereby dismissed at his cost.
 
 ON PETITION FOR REHEARING
 ORDER
 
 50
 * These appeals came on to be heard on a petition for a rehearing with a suggestion that they be heard en banc. No Judge having requested that a vote be taken thereon, the petition was heard and determined by the panel.
 
 
 51
 In our opinion in this case we found as to Columbia Gas that there was not even a scintilla of evidence that it had conspired with anyone to maliciously prosecute Worley. In his petition for rehearing plaintiff-appellee raises no argument challenging this finding.
 
 
 52
 As to Kentucky Gas Transmission Corporation, we found that its only possible participation in the alleged conspiracy would have been through the acts of Jimmy E. Sligh, its Chief Inspector on the project; and we further found his acts clearly insufficient to establish such conspiracy. Plaintiff contends that Sligh admitted to threatening the arrest of Worley. Plaintiff relies on Sligh's response to two of Worley's employees, Roy Clark and Ronald Harness, who had followed him to his automobile and who asked him how they might get their pay checks cashed. Worley's employees testified that Sligh said that the best thing they could do was to have Worley arrested. That states only his opinion, and does not show that he conspired with them. Nor does Sligh's conversation with Paul J. Schulien and his employee, Charles Kaufman, who was a supplier of materials to Worley, indicate any conspiracy with them. As we pointed out in our opinion, there was no evidence that Worley's arrest on the eighteen warrants or the indictment resulted from any of these conversations.
 
 
 53
 As to Mutual Pipeline Contractors, Inc., we reversed, holding that even if the activities of Mutual or of its officers (John Dix and Chester Nowicke) were the proximate cause of the prosecution, (1) there was probable cause for the prosecution, and (2) the advice of counsel served as an absolute defense.
 
 
 54
 Relevant to the probable cause issue, plaintiff's counsel says that the testimony of Bob Bates, a bank official, showed that Dix had told First Security Bank to cover checks written by Worley. What Bates testified to was that Dix asked him 'to take care of' Worley's banking needs. Bates admittedly took that to be a request not to let any of Worley's checks bounce.
 
 
 55
 Gerald Hodges, another bank official, testified that there had been absolutely no commitment by Dix to cover Worley's checks, and that he (Hodges) was the responsible officer in charge of such arrangements. Besides the fact that Bates' interpretation of the given words seems bizarre, the mere conflict between Bates and Hodges militates against Worley because he must make a clear showing that there was no probable cause. Reid v. True, 302 S.W.2d 846 (Ky.1957), and Lexington Cab Co. v. Terrell, 282 Ky. 70, 137 S.W.2d 721 (1940).
 
 
 56
 Worley knew that the bank was not covering his cold checks. With knowledge that he did not have sufficient funds in the bank, he wrote a total of 150 n.s.f. checks, totaling $34,000, over a period of two months.
 
 
 57
 Also supporting probable cause to obtain the warrants was the fact that J. C. Penney Co. and Clyde Barbour, a local merchant, also obtained warrants against Worley, for writing cold checks. Worley did not allege that either the Penney Co. or Barbour were part of the 'corporate octopus' that Worley believed was 'out to get him'. If they thought they had probable cause, it is a strong indication that the other persons who obtained warrants also thought so.
 
 
 58
 On the advice of counsel issue, plaintiff suggests that Attorney Clarke was prejudiced merely because he signed the bond as attorney in fact for defendant's insurance carrier. We do not see how this could make Clarke prejudiced because he was not subject to personal liability. Moreover, Kentucky law requires only that an attorney be in possession of all the facts, not that he be disinterested, for the defense of advice of counsel to be valid in a malicious prosecution case.
 
 
 59
 The probable cause and advice of counsel bases also support the judgment as to the Kentucky Gas Transmission Corporation and Columbia Gas of Kentucky, even though we found for those defendants on the ground of insufficient evidence to show conspiracy to maliciously prosecute.
 
 
 60
 In our previous opinion we discussed the issue of termination of a supposed malicious prosecution. We found that there was no evidence that the counts on which Worley had been imprisoned had been successfully terminated in his favor. We clearly noted that the Moore and Lykins indictment had been terminated successfully in Worley's favor, but that in our opinion it hardly justified an award of $1,500,000. Thus, we did not decide against Worley on the termination issue since the Court submetted to the jury only the issues with respect to the Moore indictment.
 
 
 61
 Attached to the petition for rehearing plaintiff's attorney has filed a copy of an order of Judge Breslin, stating that the Sappington, Coker, Penney Co. and Barbour warrants, on which Worley had been imprisoned, had been abandoned. A copy of that order was not made a part of the record in this case.
 
 
 62
 In their briefs the appellants had raised the issue of lack of the necessary court order terminating the warrants, and appellee's counsel did not offer any such order in evidence, if indeed he knew that it existed. Had our prior decision been based solely on the termination issue, we would be faced with a difficult question as to the effect of Judge Breslin's order, and whether plaintiff was estopped from introducing it into the record at this late date; however, since there are other grounds to support our decision, we need not consider the effect of the state court order.
 
 
 63
 The petition for rehearing is denied.
 
 II
 ON MOTION TO AMEND COMPLAINT
 
 64
 Plaintiff has moved to amend his complaint to state a violation of the federal civil rights statutes against defendants in addition to his original charge of conspiracy to maliciously prosecute.
 
 
 65
 We refuse to allow such amendment because it is a well-established principle of law that an appellate court will not allow amendments to conform to evidence, by a losing party, to bring about reversal of a judgment which is otherwise correct. United States v. Shapiro, Inc., 92 U.S.App.D.C. 91, 202 F.2d 459 (1953); Trantham v. Canal Ins. Co., 117 F.Supp. 241 (E.D.Tenn.1953), aff'd, 220 F.2d 752 (6th Cir. 1955).
 
 
 66
 Our denial of plaintiff's petition for rehearing has previously expressed our belief in the correctness of the judgment in this case. To allow amendment would be a futile gesture because any civil rights violation would necessarily have to rise or fall on the establishing of the requisite elements of malicious prosecution. The supposed new theory is actually dependent on the old.
 
 
 67
 The issues of probable cause, advice of counsel, and lack of proof of conspiratorial activity, have been decided adversely to plaintiff, and plaintiff is now barred from invoking them in a civil rights action by the doctrines of res judicata and collateral estoppel.
 
 
 68
 Furthermore, 'a complaint cannot be amended on appeal . . . where the amendment raises issues not within the theory on which the case was tried.' 3 Moore's Fed.Prac., P15.11 (2d ed. 1964).
 
 
 69
 We think a fair reading of the record shows that the case was not tried on the issues raised at this late date.
 
 Plaintiff's motion to amend is denied
 
 
 [1]
 Worley called Circuit Judge John A. Breslin, who presided at his trial, to prove his acquittal on the Lykins indictment. Judge Breslin was asked about a number of other matters, concerning which his recollection was vague. He did testify that a number of civil suits had been filed; that the matter 'pretty soon became what I describe as a can of worms'; and that he would have to go by his records completely as he had no recollection of individual events. In response to a question by plaintiff's counsel as to whether there were any charges pending in his court against Worley, he answered, 'Not to my knowledge.' This does not prove that the charges were terminated. They could be terminated only by a 'no bill' or a dismissal by the court. The Circuit Court in Kentucky is a court of record, and its entries can be proven only by its records. Simpson v. Antrobus, 260 Ky. 641, 86 S.W.2d 544 (1935); cf. Poynter v. Smith, 290 Ky. 169, 160 S.W.2d 380 (1942). The Burden of proof to show termination was on plaintiff, and he did not meet that burden