Gregory D'ANGELO, M.D., Appellant,

v.

Theodore L. MUSSLER, ESQ., and Mussler & Associates, Appellees.

No. 2008–CA–001003–MR.

Court of Appeals of Kentucky.

May 29, 2009.

Ordered Published July 10, 2009.

Jason E. Taylor, Scott P. Whonsetler, Louisville, KY, for appellant.

John W. Phillips, William P. Swain, Louisville, KY, for appellee.

Before DIXON AND MOORE, Judges; KNOPF, Senior Judge.[1]

## OPINION

MOORE, Judge.

This case against attorney Theodore Mussler and his law firm is the result of the filing and subsequent dismissal of a prior malpractice action against Gregory D'Angelo, M.D., which Mussler brought on behalf of one of D'Angelo's former patients, Austin Jacobs. In the prior malpractice action, Mussler voluntarily dismissed the malpractice action with prejudice on May 30, 2006. Exactly one year after the dismissal, Dr. D'Angelo filed his action against Mussler and his firm alleging wrongful use of civil proceedings. Mussler moved for summary judgment contending that Dr. D'Angelo had not produced evidence sufficient to establish the element of lack of probable cause. The circuit court granted summary judgment. Upon review, we affirm.

### STATEMENT OF FACTS

On June 24, 1999, Austin Jacobs suffered a fracture of his right elbow while riding a go-cart on his family farm in Winchester, Kentucky. He was taken first

---

1. Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

to Central Baptist Hospital where the fracture was diagnosed.

On June 25, Austin was seen in the office of Dr. D'Angelo, an orthopaedic surgeon, who evaluated the injury. The examination revealed that Austin's arm was neurovascularly intact. Dr. D'Angelo determined that Austin had a displaced, extended fracture of the elbow. The next day, Dr. D'Angelo performed an orthopaedic procedure wherein he externally pinned Austin's elbow fracture. This involved placing pins through the skin and into the bones without opening up Austin's arm. Immediately following surgery, Austin complained, for the first time, of pain and a cold sensation in his right arm. Austin was then seen by another orthopedist, Dr. Mary Ireland, who referred Austin to Dr. Walter Badenhausen.

On December 7, 1999, Dr. Badenhausen performed surgery to explore the path of Austin's ulnar nerve. During the surgery, Dr. Badenhausen performed neurolysis and anterior transposition of the ulnar nerve, which allowed Dr. Badenhausen to see the condition of the ulnar nerve. Dr. Badenhausen noticed localized scar tissue on the ulnar nerve and believed that a pin had gone through the nerve. Austin remained under Dr. Badenhausen's care through July 10, 2002.

In May of 2004, Austin's mother, Audeen Jacobs, contacted Mussler about a possible malpractice suit against Dr. D'Angelo because of the permanent damage to Austin's elbow following the June 26, 1999 surgery performed by Dr. D'Angelo. Mussler agreed to investigate a potential malpractice lawsuit against Dr. D'Angelo.

On May 13, 2004, Mussler met with Dr. Badenhausen. Dr. Badenhausen was in possession of 111 pages of medical records regarding Austin's treatment. Of these records, the only record describing Austin's June 26, 1999 surgery was Dr. D'Angelo's operating note. The operating note did not document the types of precautions employed by Dr. D'Angelo to avoid injury to the nerve. In an affidavit, Mussler stated that during that meeting, Dr. Badenhausen expressed the opinion to Mussler that Dr. D'Angelo's care of Austin during the June 26, 1999 surgery was below the acceptable standard of medical care under like or similar circumstances and caused Austin permanent injury. On May 14, 2004, Dr. Badenhausen provided Mussler a copy of Austin Jacobs' medical records in his possession.

On October 4, 2004, based upon his review of the medical records and his consultation with Dr. Badenhausen, Mussler filed a malpractice suit against Dr. D'Angelo in Fayette Circuit Court. The case was styled *Audeen Jacobs, as Parent and Next Friend of Austin P. Jacobs, a Minor v. Gregory D'Angelo, M.D., et al.*, civil action number 04–CI–4043, (hereinafter "the Jacobs litigation").

On July 13, 2005, Dr. D'Angelo moved for summary judgment claiming that the plaintiffs would be unable to support their claim with expert testimony. On July 29, 2005, Dr. D'Angelo's motion for summary judgment was denied. The court ordered the plaintiffs to provide a detailed Kentucky Rules of Civil Procedure (CR) 26.02 disclosure of expert witnesses, as well as an affidavit from Dr. Badenhausen stating that he would testify that Dr. D'Angelo's treatment of Austin fell below the standard of care.

On August 1, 2005, Mussler obtained an affidavit from Dr. Badenhausen and disclosed him as an expert witness. In his affidavit, Dr. Badenhausen stated that Dr. D'Angelo's care of Austin on June 26, 1999, fell below the acceptable standards of medical care under like or similar circumstances. He further opined that if Dr.

D'Angelo had palpated the ulnar nerve or extended the arm outward to allow the ulnar nerve to rotate beneath the elbow, the pinning would not have resulted in permanent injury to Austin's ulnar nerve. The affidavit also stated that Dr. Badenhausen agreed to testify at trial and express this opinion.

On March 17, 2006, counsel for Dr. D'Angelo took Dr. Badenhausen's deposition. At this deposition, and for the first time, Dr. Badenhausen's criticism of Dr. D'Angelo was equivocal and uncertain. On May 30, 2006, Mussler voluntarily dismissed the suit against Dr. D'Angelo.

On May 30, 2007, Dr. D'Angelo filed this action against Mussler alleging that Mussler filed the Jacobs litigation without probable cause and for improper purpose. Dr. D'Angelo also alleged that Mussler did not conduct a reasonable investigation of the facts before filing suit against Dr. D'Angelo.

On November 19, 2007, Mussler filed a motion for summary judgment, and on January 3, 2008, a hearing on Mussler's motion for summary judgment was held. The court determined that before it rendered summary judgment in favor of Mussler, Dr. D'Angelo should be allowed to depose Dr. Badenhausen pursuant to the following exchange:

> THE COURT: Because I think you have a strong argument for the summary judgment, but at the same time without them having deposed the person about this issue, which is all they've got, is well, he really didn't meet with him, or when he met with him, he really told him, no, I think the guy is fine, he's great, he's-I mean, and I don't think that's going to happen. I mean, I can't imagine. It's not consistent with his affidavit that he gave a year later.
>
> MR. PHILLIPS: I don't think he's going to remember, frankly, Your Honor,

but I think it's-you know, if you say do it, we're going to do it.

> THE COURT: Well, and if he doesn't remember it-I mean, only if you come with something affirmative out of this deposition can you survive this.
>
> MR. TAYLOR: I respect the Court's opinion, Judge.
>
> THE COURT: So, if he says he doesn't remember, or, yes, the meeting occurred, and yes, I gave him that opinion, then summary is yours. They've got to have something.
>
> . . . .
>
> MR. TAYLOR: Can we at least talk about the time where he had him sign the affidavit, that meeting, not about the contents of the—
>
> THE COURT: Okay. Although, I mean, that kind of speaks for itself. I mean, unless you—I don't—but while he's there go ahead and do it, and that way there's no question that you were able to discover.

In short, by allowing the parties to further brief the issue, the court held that D'Angelo must present affirmative evidence showing that: 1) a pre-litigation consultation did not occur; 2) that a pre-litigation consultation did occur, but, at the time of that meeting, Badenhausen was not critical of Dr. D'Angelo's care of Austin on June 26, 1999; or 3) that Dr. Badenhausen's August 1, 2005 affidavit did not reflect Badenhausen's actual opinions. If no such affirmative evidence was produced, the court would be inclined to grant Mussler's motion for summary judgment.

On January 30, 2008, Dr. Badenhausen's deposition was taken on the limited issue of the pre-litigation consultation. Dr. Badenhausen testified that: 1) Mussler came to him on May 13, 2004, seeking information and opinions from him, as well as requesting a copy of Austin's medical rec-

ords; 2) he expressed to Mussler at that meeting his opinion that Dr. D'Angelo had driven a pin through Austin's ulnar nerve in the operation performed on June 26, 1999; and that 3) the contents of the August 1, 2005 affidavit reflected his true and accurate opinions at that time.

On April 29, 2008, the court granted Mussler's motion for summary judgment on the following bases: (1) in light of the fact that Dr. Badenhausen's deposition reaffirmed the existence of a pre-litigation consultation, Mussler held a reasonable belief that Dr. Badenhausen's criticisms of the care rendered by Dr. D'Angelo gave Austin's claim viability; (2) D'Angelo did not offer any evidence to place these facts in controversy, or suggest how further discovery might create an issue of fact on this question; and (3) the denial of Dr. D'Angelo's motion for summary judgment in the Jacobs litigation supports the position that Mussler had probable cause to file the underlying claim.

Dr. D'Angelo filed a timely appeal, arguing that the circuit court ruled incorrectly that Mussler was not liable as a matter of law for wrongful use of civil proceedings. Upon review, we affirm.

## ANALYSIS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App.2001). In other words, summary judgment should be granted if it appears impossible that the non-moving party will be able to produce evidence warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Ctr.*, 807 S.W.2d 476, 482 (Ky.1991). While the moving party bears the initial burden of showing that no genuine issue of material fact exists, the opposing party has the burden of presenting some affirmative evidence showing that there is a genuine issue of material fact. *City of Florence v. Chipman*, 38 S.W.3d 387, 390 (Ky.2001). When there is a complete failure of proof concerning an essential element of the non-moving party's case, there can be no genuine issue of material fact and thus summary judgment must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Public policy requires that all persons be able to freely resort to the courts for redress of a wrong, and the law should and does protect them when they commence a civil or criminal action in good faith and upon reasonable grounds." *Prewitt v. Sexton*, 777 S.W.2d 891, 895 (Ky.1989) (paraphrasing *Davis v. Brady*, 218 Ky. 384, 291 S.W. 412 (1927)). It is for this reason that one must strictly comply with the prerequisites of maintaining an action for wrongful use of civil proceedings. The elements of this cause of action are: (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding. *Smith v. Smith*, 296 Ky. 785, 178 S.W.2d 613 (Ky.1944); *Cravens v. Long*, 257 S.W.2d 548 (Ky.1953); *Blankenship v. Staton*, 348 S.W.2d 925 (Ky.1961); *H.S. Leyman Co. v. Short*, 214 Ky. 272, 283 S.W. 96 (1926); Restatement (Second) of Torts § 674, (1977), *et seq.*

The trial court ruled only on the element of lack of probable cause. Having decided that Dr. D'Angelo did not establish this element with affirmative evidence, the court granted Mussler's motion for sum-

mary judgment without discussing the other elements. If the trial court was correct, there is no need for a discussion of the other elements at this level.

Present law in Kentucky regarding the ramifications of wrongful use of civil proceedings is set out by our Supreme Court in *Mapother and Mapother, P.S.C. v. Douglas*, 750 S.W.2d 430 (Ky.1988), and *Prewitt v. Sexton*, 777 S.W.2d 891 (Ky. 1989), wherein the Court adopted Restatement (Second) of Torts §§ 674–681B (1977).

■ In an action for wrongful civil proceedings, the court determines whether the defendant had probable cause for his action. Restatement (Second) of Torts § 681B(1)(c). The jury's role is limited to adjudicating the facts necessary to enable the court to determine the existence, or lack, of probable cause. *Id.* at § 681B(2)(a). Where the record shows no conflict as to the investigation made by the defendant before filing the lawsuit, the issue may be resolved by the court as a matter of law.

■ A plaintiff must prove that the proceeding was initiated or continued without probable cause. Restatement (Second) of Torts § 662(c), comment (f) states:

The question of probable cause is to be determined in the light of those facts that the accuser knows or reasonably believes to exist at the time when he acts. His subsequent discovery of exculpatory facts does not indicate a lack of probable cause for initiating the proceedings, although he may make himself liable by subsequently taking an active part in pressing the proceedings.

*See also id.* at § 675, comment (c) (adapting this comment to wrongful civil proceedings).

■ In a civil proceeding, the quantum of necessary probable cause is less than that required in a criminal action:

[W]hen the proceedings are civil, while the person initiating them cannot have a reasonable belief in the existence of the facts on which the proceedings are based if he knows that the alleged facts are not true and his claim is based on false testimony, it is enough if their existence is not certain but he believes that he can establish their existence to the satisfaction of court and jury. In a word, the initiator of private civil proceedings need not have the same degree of certainty as to the relevant facts that is required of a private prosecutor or criminal proceedings. In many cases civil proceedings, to be effective, must be begun before all of the relevant facts can be ascertained to a reasonable degree of certainty. To put the initiator of civil proceedings to a greater risk of liability would put an undesirable burden upon those whose rights cannot be otherwise effectively enforced.

*Id.* § 675, comment (d).

■ The evidence before the Court shows that Mussler had probable cause to bring the underlying suit on behalf of his client against Dr. D'Angelo. As we indicated above, "[t]he moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present 'at least some affirmative evidence showing that there is a genuine issue of material fact for trial.'" *Lewis*, 56 S.W.3d at 436. Here, Mussler relied on the following evidence in bringing the Jacobs litigation:

● Austin's ulnar nerve was damaged during the procedure wherein Dr. D'Angelo externally pinned Austin's elbow fracture, and immediately following the surgery, for the first time,

Austin complained of pain and a cold sensation in his right arm;

- the August 1, 2005 affidavit of Dr. Badenhausen, Austin's treating physician of approximately three years, stated Dr. Badenhausen's opinion that, based upon the history he obtained, his years of treating and examining Austin, the surgery he performed on Austin, and his training and experience in the discipline of orthopaedic surgery, the procedure performed by Dr. D'Angelo on Austin fell below the acceptable standards of medical care under like or similar circumstances, and states his willingness to testify regarding that opinion;

- the deposition testimony of Dr. Badenhausen reaffirms the authenticity and accuracy of the opinion he rendered in his August 1, 2005 affidavit;

- Mussler's own affidavit states that he had met with Dr. Badenhausen on May 13, 2004, and that Dr. Badenhausen expressed his opinion, stated in his affidavit of August 1, 2005, during that meeting;

- Mussler's statement that he met with Dr. Badenhausen prior to filing the Jacobs action is further corroborated by Badenhausen's deposition testimony and the $300 consulting fee paid by Mussler, received by Dr. Badenhausen, and referenced in Mussler's letter to his client; and

- the evidence available in the record shows that on May 13, 2004, Dr. Badenhausen was in possession of 111 pages of medical records regarding Austin's treatment, including Dr. D'Angelo's operating note which does not document any precautions employed to avoid injury to the nerve.

Relying on Restatement (Second) of Torts § 675, comment (d), we conclude that Dr. D'Angelo failed to provide any affirmative evidence demonstrating that Mussler knew that the averments stated in the Jacobs litigation complaint were not true, or that the claims were based on false testimony. At worst, Dr. D'Angelo may argue that Mussler began the Jacobs litigation before all of the relevant facts could be ascertained to a reasonable degree of certainty (*i.e.*, whether, in fact, circumstances existed demonstrating that the injury caused by pinning the ulnar nerve could have been avoided). However, it is enough if the existence of the relevant facts is not certain, but Mussler believed that he could establish their existence to the satisfaction of court. Here, under the investigation and facts as Mussler knew them when he filed the Jacobs litigation, we cannot find that he lacked probable cause for the basis of the action. Having so found, we cannot find error in the trial court's decision.

For the reasons stated, we affirm the decision of the circuit court.

ALL CONCUR.