RENDERED: NOVEMBER 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1601-MR

THIRTEEN STREET
DEVELOPMENT, LLC, AND
VULCAN INVESTMENTS, LLC                                    APPELLANTS


|       | APPEAL FROM WARREN CIRCUIT COURT |
|-------|----------------------------------|
| v.    | HONORABLE STEVE ALAN WILSON, JUDGE |
|       | ACTION NO. 14-CI-00887 |


AM&W, INC., AND
MALCOLM CHERRY                                               APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Thirteen Street Development, LLC, and Vulcan Investments,

LLC, bring this appeal from a June 27, 2019, Trial Order and Judgment upon a

jury verdict awarding AM&W, Inc., and Malcolm Cherry (collectively referred to

as appellees) $33,000 in damages for their claim of wrongful use of civil

proceedings and from a September 19, 2019, order awarding appellees $34,050 in attorney's fees.[1] For the reasons stated, we reluctantly reverse and remand.

This action has a tortuous procedural history; thus, for the sake of clarity, we will only recite those facts necessary for resolution of this appeal. AM&W, Inc., owned real property located at 927 Payne Street, Bowling Green, Kentucky. The real property was subject to a lease for a cellular phone tower and generated significant lease payments therefrom. AM&W's president was Malcolm Cherry.

In November 2004, AM&W entered into an agreement to sell the 927 Payne Street property (real property) and other business assets for $924,080 to American Machine and Welding, Inc. (American Machine).[2] Under the agreement, AM&W retained the right to receive monthly lease payments from the cellular tower until the indebtedness ($702,500) owed to AM&W was paid in full by American Machine. AM&W also filed a mortgage lien upon the real property. Later, in 2007, American Machine borrowed $50,000 from Lewisburg Banking Company, and Lewisburg Banking also recorded a mortgage lien upon the real property to secure repayment of the bank's loan. At the same time, AM&W and

[1] Appellants also properly and timely filed a motion for judgment notwithstanding the verdict pursuant to Kentucky Rules of Civil Procedure (CR) 50.02 after entry of the judgment on the jury verdict. The motion was denied by order entered September 26, 2019.

[2] AM&W, Inc., and American Machine and Welding, Inc., are two separate corporations.

Lewisburg Banking entered into a Subordination Agreement; therein, it was agreed that Lewisburg Banking's mortgage lien would be superior to AM&W's mortgage lien.

In 2008, Lewisburg Banking filed a foreclosure action in the Warren Circuit Court (Action No. 08-CI-00840). American Machine had defaulted in its mortgage payments to Lewisburg Banking. AM&W was also named as a defendant. A dispute ensued between Lewisburg Banking and AM&W concerning whether AM&W was entitled to continue receiving the monthly lease payments from the cellular tower. In an August 7, 2008, order, the circuit court adjudicated:

> IT IS THEREFORE ORDERED AND ADJUDGED as a matter of act and law that despite the Plaintiff's priority interest in the mortgaged property, the Defendant, AM&W, Inc. is entitled to continued receipt of the cell tower lease payments. Any purchaser of the property being foreclosed on must necessarily be advised of AM&W's continued right to receive such payments, and AM&W, Inc.'s rights regarding the cell tower lease payments shall survive even after the mortgaged property is foreclosed upon and sold. Any successor in interest to the foreclosed property shall take same subject to AM&W's continued rights of receipt of these lease payments.

August 7, 2008, order at 2-3.[3]

Eventually, the master commissioner sold the real property at public auction to Lewisburg Banking. Thirteen Street Development, LLC (Thirteen

---

[3] This order was not appealed.

Street) then purchased the property from Lewisburg Banking on December 19, 2008. Thirteen Street executed a promissory note with American Bank & Trust Company (American Bank) to secure financing to purchase the real property, and American Bank was granted a mortgage lien upon said property to secure repayment of the note indebtedness. The primary principal of Thirteen Street was Kelly Thomas.

On December 2, 2011, Thirteen Street filed a complaint in the Warren Circuit Court against appellees (Action No. 11-CI-01957). In the complaint, Thirteen Street alleged that it was entitled to the monthly lease payments from the cellular tower as it possessed fee simple title to the real property upon which the tower was situated. Appellees filed a motion to dismiss the action, which was granted by the circuit court. In the order dismissing, the circuit court determined:

> In the Plaintiff's complaint, the Plaintiff affirmatively alleges that the property in issue was sold subject to an existing ground lease agreement between the Defendants herein and Cingular. The matter involves a cell tower, which is conspicuous on the property, open, and obvious. The Plaintiff was aware of the existence of the tower, and the ground lease that related to same.
>
> The Plaintiff's complaint further reveals the prior [August 7, 2008] order of the Warren Circuit Court in Case No. 08-CI-840 (Complaint, Paragraph #10). This order, which is attached to the Defendant's motion, specifically states:
>
> > IT IS THEREFORE ORDERED AND ADJUDGED as a matter of fact and law that

-4-

despite the Plaintiff's priority interest in the mortgaged property, the Defendant, AM&W, Inc. is entitled to continued receipt of the cell tower lease payments. Any purchaser of the property being foreclosed on must necessarily be advised of AM&W's continued right to receive such payments, and AM&W, Inc.'s rights regarding the cell tower lease payments shall survive even after the mortgaged property is foreclosed upon and sold. Any successor in interest to the foreclosed property shall take same subject to AM&W's continued rights of receipt of these lease payments.

The Plaintiff herein, as the successor to Lewisburg Banking Company's ownership of the property in issue, took this property subject to AM&W's continued right to receive cell tower lease payments.

January 26, 2012, Order Granting Motion to Dismiss at 1-2.

Thirteen Street filed a direct appeal (Appeal No. 2012-CA-000328-MR) to the Court of Appeals. In an Opinion and Order rendered August 16, 2013, the Court of Appeals dismissed the appeal for lack of jurisdiction to give an advisory opinion and due to a change of circumstance where Thirteen Street was administratively dissolved. The Court of Appeals also noted that during the pendency of the appeal, American Bank foreclosed upon the real property. The real property was sold by the master commissioner to Vulcan Investments, LLC, another entity owned by Kelly Thomas. A motion for discretionary review was

-5-

denied by the Kentucky Supreme Court on June 11, 2014 (Appeal No. 2013-SC-000730-D).

Shortly thereafter, on July 23, 2014, Thirteen Street and Vulcan Investments (collectively referred to as appellants) filed a declaratory judgment action (Action No. 14-CI-00887) against appellees in the Warren Circuit Court. We again note that Kelly Thomas was a principal member of both Thirteen Street and Vulcan Investments. In the complaint, appellants again claimed entitlement to the monthly lease payments as fee simple owner of the real property upon which the cellular tower was situated.[4]

Appellees filed a motion to dismiss and a counterclaim. Appellees argued that the complaint should be dismissed as the circuit court had previously ruled in Action Nos. 08-CI-00840 and 11-CI-01957 that AM&W was entitled to the lease payments. In their counterclaim, appellees maintained, *inter alia*, that "the conduct of . . . [appellants] in bringing both [Action Nos.] 11-CI-1957 and 14-CI-887 gives rise to the torts of . . . malicious prosecution and/or wrongful use of a civil proceeding." Motion to Dismiss and Counterclaim at 7.

By order entered September 2, 2014, the circuit court granted appellants' motion to dismiss. The circuit court concluded:

---

[4] Vulcan Investments, LLC, held fee simple title to the real property at the time of filing this action in 2014.

The matter involves a cell tower, which is conspicuous on the property, open, and obvious. The Plaintiffs have been aware of the existence of the tower, and the ground lease that is related to same throughout these proceedings.

By a prior order of the Warren Circuit Court in Case No. 08-CI-840, entered on August 2, 2008, this Court held:

> IT IS THEREFORE ORDERED AND ADJUDGED as a matter of fact and law that despite the Plaintiff's priority interest in the mortgaged property, the Defendant, AM&W, Inc. is entitled to continued receipt of the cell tower lease payments. Any purchaser of the property being foreclosed on must necessarily be advised of AM&W's continued right to receive such payments, and AM&W, Inc.'s rights regarding the cell tower lease payments shall survive even after the mortgaged property is foreclosed upon and sold. Any successor in interest to the foreclosed property shall take same subject to AM&W's continued rights of receipt of these lease payments.

The Plaintiffs herein have been aware of this order at all times relevant and well before this current litigation was initiated. This Order from 08-CI-840 was never appealed, and it is no longer appealable.

Undaunted by the Order referenced above, Thirteen Street initiated a subsequent action in the Warren Circuit Court in Case No. 11-CI-1957. It concerned the very same cell tower and the rights to the lease payments regarding same. Based upon the Court's clear and unequivocal decision in 08-CI-840, the 11-CI-1957 was dismissed at the outset of this case by an order entered on

January 26, 2012. This Order expressly references the 08-CI-840 litigation and the order of August 2, 2008.

Thirteen Street appealed to the Kentucky Court of Appeals. Its appeal was dismissed by the Court of Appeals on August 16, 2013. Thirteen Street sought a reconsideration by the Court of Appeals, which was denied by Order of September 20, 2013. Thirteen Street sought discretionary review by the Kentucky Supreme Court, which was also denied.

Based upon the above, the Defendants' motion to dismiss now before the Court, is SUSTAINED. The facts have not changed. The law has not changed. This Court ruled back on August 7, 2008[,] that Cherry and AM&W were entitled to the cell tower lease payments in issue. This Court made the exact same ruling again on January 26, 2012. Thirteen Street knew all this when it purchased the property. Vulcan knew it when it purchased the property. Kelly Thomas is a principal member of both entities, and the record further reveals that the Master Commissioner announced at these sales that cell tower rights were not being conveyed.

September 2, 2014, Order at 1-2. The circuit court included complete Kentucky Rules of Civil Procedure (CR) 54.02 finality language.

Appellants thereupon pursued a direct appeal (Appeal No. 2014-CA-001471-MR) to the Court of Appeals, and the Court of Appeals affirmed the September 2, 2014, order, by opinion rendered on January 15, 2016. In so doing, the Court of Appeals determined that appellants' "purchased the 927 Payne Street property subject to that limitation [appellees retained right to receive cellular lease

payments] and are bound by it." *Thirteen Street Dev., LLC v. AM&W, Inc.*, No. 2014-CA-001471-MR, 2016 WL 194799, at * 3 (Ky. App. Jan. 15, 2016).[5]

Subsequently, appellees' counterclaim against appellants asserting wrongful use of civil proceedings proceeded to a jury trial in June of 2019. The jury ultimately found in favor of appellees and awarded $33,000 in compensatory damages. The circuit court thereafter awarded appellees $34,050 in attorney's fees.[6] Appellants filed a CR 50.02 motion for judgment notwithstanding the verdict, which was denied by order entered September 26, 2019. This appeal followed.

<u>Wrongful Use of Civil Proceedings</u>

The Kentucky Supreme Court has set forth the elements of a wrongful use of civil proceedings/malicious prosecution claim, as follows:[7]

> 1) the defendant initiated, continued, or procured a
>    criminal or civil judicial proceeding, or an

---

[5] The counterclaim for wrongful use of civil proceedings apparently was held in abeyance by the parties pending the appeal of the order dismissing the complaint.

[6] During the course of trial, the court granted appellants' directed verdict motion on the attorney's fees claim, since no evidence was presented at trial on this issue. Upon entry of judgment on the jury verdict, the court entered an order on September 19, 2019, awarding attorney's fees based upon the "equitable power" of the court, while acknowledging that attorney's fees are a component of damages in a malicious prosecution case.

[7] In *Martin v. O'Daniel*, 507 S.W.3d 1, 11 (Ky. 2016), the Kentucky Supreme Court appears to have merged the two torts of malicious prosecution and wrongful use of civil proceedings, even though the RESTATEMENT (SECOND) OF TORTS §§ 653 and 674 (1977) and prior common law had clearly differentiated the two. *See Prewitt v. Sexton*, 777 S.W.2d 891, 893-94 (Ky. 1989); *Mapother and Mapother, P.S.C. v. Douglas*, 750 S.W.2d 430, 431 (Ky. 1988).

-9-

administrative disciplinary proceeding against the plaintiff;

2) the defendant acted without probable cause;

3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based;

4) the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and

5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016).

Appellants maintain that appellees did not prove the elements of a wrongful use of civil proceedings claim, thus entitling them to a directed verdict at the close of proof at trial. In particular, appellants contend that appellees failed to prove lack of probable cause as appellants relied upon the advice of counsel in filing both Action Nos. 11-CI-01957 and 14-CI-00887. Appellants maintain that advice of counsel is an absolute defense to a claim for wrongful use of civil proceedings. Appellants point to the testimony of Brian Lowder, who represented Thirteen Street in Action No. 11-CI-01957 and who filed the complaint for appellants in Action No. 14-CI-00887 against appellees. According to appellants, Lowder testified that he advised Thomas to initiate both circuit court actions (Nos.

-10-

11-CI-01957 and 14-CI-00887) for the purpose of obtaining a full adjudication on the merits of the issue of whether appellants were entitled to the rental income from the cellular tower. Appellants also cite to Lowder's testimony that he was fully apprised of all the material facts by Thomas. And, appellants state that Thomas testified that he relied upon Lowder's advice in filing both actions against appellees. Appellants believe that the material facts were uncontroverted upon whether Thomas relied upon Lowder's advice, thus entitling them to a directed verdict.

A directed verdict is proper "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt (or liability)[.]" *Mountain Water Dist. v. Smith*, 314 S.W.3d 312, 314 (Ky. App. 2010) (quoting *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)). The evidence and reasonable inferences therefrom must be construed in a light most favorable to the nonmoving party. *Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 261 (Ky. App. 2007).

### A. Probable Cause – Advice of Counsel

Reliance upon the advice of counsel is recognized as a complete defense to a wrongful use of civil proceedings claim as it conclusively demonstrates the element of probable cause. *Lexington Cab Co., Inc. v. Terrell*, 137 S.W.2d 721, 724 (Ky. 1940); *Kirk v. Marcum*, 713 S.W.2d 481, 483 (Ky. App.

1986).  More specifically, the Kentucky Supreme Court has adopted the

RESTATEMENT (SECOND) OF TORTS § 675 (1977), which is entitled *Existence of*

*Probable Cause* and provides:

> One who takes an active part in the initiation,
> continuation or procurement of civil proceedings against
> another has probable cause for doing so if he reasonably
> believes in the existence of the facts upon which the
> claim is based, and either
>
>> (a) correctly or reasonably believes that under
>>     those facts the claim may be valid under the
>>     applicable law, or
>>
>> (b) believes to this effect in reliance upon the
>>     advice of counsel, sought in good faith and
>>     given after full disclosure of all relevant facts
>>     within his knowledge and information.

*Mapother v. Mapother*, 750 S.W.2d at 431; *see also D'Angelo v. Mussler*, 290

S.W.3d 75, 80 (Ky. App. 2009).  Under section (b) of the above Restatement, it is

noted that "the advice of counsel is a protection even though it consists merely of

an opinion that the facts so known or believed afford a chance, whether great or

small, that the claim asserted in the civil proceedings may be upheld."

RESTATEMENT (SECOND) OF TORTS § 675 cmt. g. (1977).  The Kentucky Supreme

Court has also stated that "[t]he rule is that where it is shown the defendant . . .

before instituting the original action laid all material facts before a competent

attorney and was advised by him to proceed with the suit, the advice of counsel is a

-12-

complete bar to an action for malicious prosecution, even though the attorney was in error." *Harter v. Lewis Stores, Inc.*, 240 S.W.2d 86, 88 (Ky. 1951).

It must be emphasized that the issue of probable cause is one of law for the court to resolve, not the jury. *Prewitt v. Sexton*, 777 S.W.2d 891, 894 (Ky. 1989); *D'Angelo*, 290 S.W.3d at 80. However, if the facts relevant to probable cause are disputed, the jury must resolve such factual dispute. Stated differently, "[t]he jury's role is limited to adjudicating the facts necessary to enable the court to determine the existence, or lack, of probable cause." *D'Angelo*, 290 S.W.3d at 80; *see also* RESTATEMENT (SECOND) OF TORTS § 681B (1977). So, "[i]t is only in circumstances where the trial court has decided that if certain facts exist they establish lack of probable cause, and the existence of such facts is in dispute, that there is a fact question for the jury to decide." *Prewitt*, 777 S.W.2d at 895.

At trial, Thomas testified that he consulted with Lowder prior to filing Action Nos. 11-CI-01957 and 14-CI-00887. Thomas also testified that his motivation for filing the actions was to receive an adjudication on the merits as to whether appellants were entitled to lease payments from the cellular tower. According to Thomas, Lowder advised him to pursue both actions, and he followed Lowder's advice. Lowder testified that he advised Thomas to file both actions (Nos. 11-CI-01957 and 14-CI-00887). According to Lowder, he did not believe that the circuit court's ruling was legally correct and filed successive

-13-

actions in the circuit court in an attempt to achieve a ruling from the Court of Appeals upon the "merits." Lowder affirmatively stated that he advised Thomas to file both actions and that Thomas had disclosed all material facts to him.

Upon review of the videotaped trial proceedings, it does not appear that appellees introduced any evidence that contradicted Thomas's and/or Lowder's testimony, and appellees do not cite this Court to any such evidence in their brief.[8] As such, the uncontroverted facts demonstrated that Thomas consulted with Lowder before filing both actions, Thomas disclosed the material facts to Lowder, Lowder advised Thomas to file both actions, and Thomas relied upon such advice in filing and pursuing the actions on behalf of Thirteen Street and Vulcan Investments. These facts stand unrefuted in the record. The burden of proof was on appellees to prove lack of probable cause, not the converse. *Prewitt,* 777 S.W.2d 891.

Thus, as to Thomas, the record does not reflect a lack of probable cause in filing the 2014 action, as he clearly relied upon the advice of counsel. However, whether attorney Lowder acted with probable cause in filing this action is another matter. Unfortunately, he was not named a party below, yet his good faith conduct was clearly implicated in Instruction No. 3, which likely influenced

---

[8] We also point out that no evidence was introduced questioning whether Brian Lowder was a competent and disinterested attorney. *See Kirk v. Marcum*, 713 S.W.2d 481, 483-84 (Ky. App. 1986).

the jury's vote based on the instruction. Submitting whether Thomas acted in good faith to the jury was in error (the trial court's terminology to address malice, presumably to satisfy the *Martin v. O'Daniel* revised articulation of the tort). *See Martin v. O'Daniel*, 507 S.W.3d 1. However, attorney Lowder's conduct is not exonerated by this Opinion. Clearly, he was aware of the final judgment entered in 2008 adjudicating the rights to the cell tower lease payments when he filed both actions in 2011 and 2014. And, he wrongfully sought an advisory opinion from this Court in 2012 as discussed in the 2013 Opinion (Appeal No. 2012-CA-000328-MR). Even more problematic, as this Court noted in its 2016 Opinion, counsel's filing of the 2014 action constituted an unauthorized collateral attack on the 2008 judgment. The essence of counsel's "merits" argument was essentially seeking an advisory opinion from this Court on two occasions. Any competent appellate lawyer knows this Court will not give advisory opinions. We plainly stated in Appeal No. 2012-CA-000328-MR:

> But we do lack jurisdiction to decide this appeal, because we do not have the power to render advisory opinions. Thirteen Street admits that it is seeking an advisory opinion as to whether subsequent purchasers of land once owned by Thirteen Street are bound by the Warren Circuit Court order awarding the appellees ownership of the cellular telephone tower lease payments.
>
> This Court has repeatedly reaffirmed the proposition that it has no jurisdiction to decide issues which do not derive from an actual case or controversy. Ky. Const. §

-15-

110, *In Re Constitutionality of House Bill No.* 222, 262 Ky. 437, 90 S.W. 692 (1936) ("Power to render advisory opinions conflicts with Kentucky Constitution Section 110 and thus cannot be exercised by the Court"). Recently, in *Philpot v. Patton*, Ky., 837 S.W.2d 491, 493 (1992), we reiterated that "[o]ur courts do not function to give advisory opinions, even on important public issues, unless there is an actual case or controversy." *Commonwealth v. Hughes*, 873 S.W.2d 828, 829-30 (Ky. 1994).

*Thirteen Street Development, LLC v. AM&W*, No. 2012-CA-000328-MR, 2013 WL 4400515, *2 (Ky. App. Aug 16, 2013).

We again must emphasize that after receiving this admonition from the Court of Appeals and after the Supreme Court declined review of this Court's 2013 Opinion, Lowder filed the 2014 action on behalf of Thirteen Street and Vulcan Investments, seeking the very same relief he sought in 2011. Had Lowder been named a party to the counterclaim pursuant to CR 13.08, the existence of probable cause and improper purpose for the lawyer and client would have been assessed separately by the jury, assuming appellants sought counsel's advice in good faith and made the proper disclosures.[9] Based on Instruction No. 3, presumably the jury thought Lowder acted in bad faith in filing the complaint.

---

[9] *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 57 cmt. d. and f. (2000) and CR 11. However, there is nothing in the record that indicates why the attorney's good faith was implicated in Instruction No. 3, given he was not a named party.

This bad faith could not be imputed to Thomas or appellants. And, we also note there are proper procedures to collaterally attack a final judgment as previously set out by this Court in the 2016 Opinion, which did not occur in this case.

As hereinbefore stated, the reliance upon advice of counsel is a complete defense to a wrongful use of civil proceedings claim as it conclusively demonstrates probable cause. *See Lexington Cab Co.*, 137 S.W.2d at 724; *Kirk*, 713 S.W.2d at 483. Appellants having established probable cause based on advice of counsel, we must conclude that the circuit court erred by denying appellants' motion for directed verdict and motion for judgment notwithstanding the verdict. *See Prewitt*, 777 S.W.2d at 894; *D'Angelo*, 290 S.W.3d at 80.[10]

Notwithstanding, we note that no court, including this Court, should condone vexatious litigation designed for the sole purpose of harassing or annoying a litigant. Had there been any evidence that appellants conspired with their attorney to file this action for an improper purpose and thus without probable cause, then our decision would likely be different.

We view any remaining contentions of error as moot.

---

[10] This Court is duty bound to follow Kentucky Supreme Court precedent. Supreme Court Rule 1.030(8)(a).

In sum, we hold that the circuit court committed error by denying appellants' motion for directed verdict and motion for judgment notwithstanding the verdict at the conclusion of the trial.

For the foregoing reasons, the Trial Order and Judgment and order awarding attorney's fees by the Warren Circuit Court are reversed and the case is remanded to the trial court for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANTS:

D. Bailey Walton
Bowling Green, Kentucky

BRIEF FOR APPELLEES:

Matthew J. Baker
Bowling Green, Kentucky